STATE of Missouri, Respondent,

v.

Louis DOOLEY, Appellant.

Louis DOOLEY, Movant,

v.

STATE of Missouri, Respondent.

No. 65817.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 24, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 11, 1995.

Case Transferred to Supreme Court
Jan. 23, 1996.

Case Retransferred to Court of
Appeals April 23, 1996.

Original Opinion Reinstated
May 7, 1996.

Arthur S. Margulis, David R. Crosby, Margulis & Grant, P.C., St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, Jefferson City, for respondent.

SMITH, Presiding Judge.

Defendant appeals from his convictions of robbery in the first degree, assault in the first degree with serious physical injury, and two counts of armed criminal action. Jury recommended punishment of twenty years for the robbery count, thirty years for the armed criminal action count pertaining to the

robbery, life imprisonment for the assault count, and fifty years for the armed criminal action count pertaining to the assault. The court imposed the sentences recommended with the first three counts to run concurrently and the fifty year sentence to run consecutively. We affirm in part, reverse in part, modify in part and remand for resentencing.

In the evening the victim, Rodney Lovings, was awakened by a telephone call from Michelle Fochtmann, his former girl friend and the mother of his daughter. She requested that he take care of their six month old daughter for a week so she could seek employment. He refused and an argument ensued. He hung up but Ms. Fochtmann called back. The argument continued and Lovings stated he was coming over to her apartment to see his daughter. She requested that he not come over. There was testimony from Fochtmann that Lovings threatened to "kick her behind". Lovings denied making a threat. He went to her apartment. He was met in the apartment by defendant and several other men, including Lee Cross. Defendant and Cross each had guns. Cross' gun was a .44 Magnum; defendant's was either a .38 or a .380. The men searched Lovings for a weapon but found none. He was then escorted from the apartment and once outside the men demanded a gold chain, a ring, his money and car keys which they took from him. Lovings testified that he was then told to run which he did. He testified that as he was running both Cross and defendant shot at him and he was struck by bullets causing several superficial wounds and a serious life threatening wound to his leg which sustained a severed artery. He has permanent damage to the leg and walks with a limp.

Defendant testified that when Lovings arrived at the apartment he was belligerent and demanded to know "where is that bitch at". Defendant, Fochtmann's boy friend at the time, and Cross drew guns and ordered Lovings out of the apartment. Lovings threatened those present in the apartment. Defendant admitted having met Cross and at least one of the other men previously, but testified that they were not his friends but Michelle's. Defendant was from Illinois and the other men were from St. Louis. After

Lovings was escorted out the door, Cross and the other men, over the objection of defendant, robbed Lovings. Defendant testified that he and Cross then escorted Lovings to his car and when Lovings reached his car Lovings grabbed a gun from his vehicle and gunfire ensued. Defendant testified that he did not fire any shots but was attempting to avoid being hit.

No evidence was adduced as to the source of the bullets which struck Lovings, i.e., whether the source was Cross' gun, defendant's gun or both, and there was therefore obviously no evidence of the source of the life-threatening wound.

Defendant was charged in each of the four counts with committing the crime while with "another, acting together". After the close of the evidence, during the instruction conference, the state sought to amend the indictment by interlineation to strike from the assault count and the companion armed criminal action count the words "and another, acting together". The state took this course of action to preclude a defense instruction positing that the person with whom defendant was acting, Cross, was acting in self-defense, a contention supported by defendant's testimony. Defendant objected to the amendment, but the trial court allowed it. The court then held no self-defense instruction concerning Cross was pertinent and refused defendant's instruction that he was acting in self-defense on the basis that defendant denied that he fired shots at Lovings at all.

Defendant contends that the conviction for assault in the first degree with serious physical injury, and the companion count of armed criminal action were unsupported by the evidence and the motion for directed verdict at the conclusion of the evidence should have been granted.

Section 565.050, RSMo 1994 provides that a person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person. Assault in the first degree is a Class B felony unless the actor inflicts serious physical injury on the victim in which case it is a Class A felony. As to defendant the charge and submitted

assault was the Class A felony. The state did not choose to submit as a lesser included offense the assault first degree Class B felony which does not require proof that serious physical injury was in fact inflicted. "Serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body. § 565.002(6) RSMo 1994. There is no doubt that at least one of the bullets which struck Lovings caused serious physical injury.

It was necessary for the state to establish that defendant attempted to kill or cause serious physical injury to Lovings and that defendant in fact did inflict serious injury to Lovings by shooting him. Under concepts of accessory liability, the proof was adequate to establish the elements of the crime. It was a reasonable inference under the evidence that Cross and defendant were acting together and that the serious physical injury sustained by Lovings was the result of their conduct while acting together. When the state amended the indictment to eliminate accessory liability it placed upon itself the burden of establishing that defendant alone caused the serious physical injury to Lovings, and the jury was so instructed. If the injury to Lovings was caused by Cross, then defendant, charged only as a principal, was not guilty of the Class A felony charged. By the amendment the state converted Cross into an independent actor whose actions did not affect or determine the liability of defendant. With the amendment the scenario became that of two individuals separately and independently shooting at the same victim, with neither bearing responsibility for the actions of the other. In its brief, the state agrees with the legal scenario presented above.

■ The evidence was adequate to establish that defendant intended to kill or seriously injure Lovings and that he shot at Lovings with that intention. But there is no conclusive evidence that defendant in fact caused serious physical injury to Lovings, an essential element of the Class A felony assault. The evidence supported two equally valid inferences. First, that defendant shot Lovings and caused the serious physical injury. Second, that Cross shot Lovings and caused the serious physical injury. Inference first would establish defendant's guilt, inference second would establish his innocence of the Class A assault felony. Our review is generally limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403 (Mo. banc 1993) [4, 5]. Where, however, the evidence presents two equally valid inferences, one of defendant's guilt and the other of his innocence, it does not, as a matter of law, establish guilt beyond a reasonable doubt. *State v. Mayfield*, 879 S.W.2d 561 (Mo.App. 1994) [1–3]; *State v. Black*, 611 S.W.2d 236 (Mo.App.1980) [9]. In such a case, the trial court lacks the power to convict and the appellate court must reverse. *State v. Gardner*, 737 S.W.2d 519 (Mo.App.1987) [3].

The state contends that the evidence was sufficient to establish that defendant *shot* Lovings.

Lovings' testimony at trial was that defendant shot *at* him. The shooting occurred at night, Lovings saw defendant shoot at him as Lovings was falling down, and stated, "I can't really watch a person shoot at you like that." A police officer testified that an individual who observed the shooting from an apartment above the parking lot chose defendant as the person who "shot" Lovings. The police officer stated that Lovings in an out-of-court statement said "Louis Dooley shot him." The hearsay testimony of the officer was not objected to. No foundation was laid to establish a basis for the observer's conclusion that defendant "shot" Lovings rather than "shot at" him. Similarly, no foundation was laid for Lovings' out-of-court statement that defendant "shot" him rather than "shot at" him as he testified in court.

In *State v. Dixon*, 420 S.W.2d 267 (Mo. 1967) [3], the court stated:

"And, it would seem to be elementary and self-evident that no witness should be heard with respect to that concerning which he does not possess the fundamental and basic testimonial qualification of knowledge ... So, when the testimony of a witness, read as a whole, *conclusively*

demonstrates that whatever he may have said with respect to the issue under investigation was a mere guess on his part and that, in fact, he did not know about that concerning which he undertook to speak, his testimony on such issue cannot be regarded as having any probative value." (Emphasis in original).

The evidence was sufficient to support a conclusion that defendant *shot at* Lovings. It does not establish that he hit Lovings.

We are unable to conclude that the hearsay testimony of the police officer was enough to establish beyond a reasonable doubt that either the observer or Lovings actually saw the bullets from defendant's gun strike Lovings under the circumstance here where two people were shooting at him.

Further, if the conclusory statement that defendant "shot" Lovings can be considered a statement of fact that the witness saw the bullet from defendant's gun move through the air and hit Lovings, as contrasted to Lovings being struck by a bullet from Cross' weapon being fired at the same time, it does not identify which of at least four wounds sustained by Lovings came from defendant's gun.

The total testimony concerning the nature of the wounds to Lovings other than the life-threatening wound to the left knee was from the emergency room doctor as follows:

"I believe he had two or three holes to the left arm, which were of no consequence, medically. He had a gunshot wound—a tangential wound to the lower part of his abdomen. And the thing I didn't mention that I now recall, that we did open his abdomen at that original operation to make sure that bullet did not penetrate and do any damage internally; and it did not. And he had a cluster of gunshot wounds about the left thigh and knee. Maybe three in the thigh, two around the knee. And I believe he had two wounds in the right thigh as well."

Proof that a deadly weapon was fired at the victim, is enough evidence for a jury to find the Class B felony of assault in the first degree. To raise the offense from Class B to Class A there must be additional proof that serious physical injury was actually inflicted on the victim. *State v. Nguyen*, 880 S.W.2d 627 (Mo.App.1994) [12]. In this case there is no question Lovings sustained serious physical injury to his left knee. But the evidence does not establish whether Cross or defendant or both inflicted the injury. The remaining wounds were not shown to have caused serious disfigurement or protracted loss or impairment of any body part. The cases relied upon by the state involved serious disfigurement or protracted loss or impairment of a body part. The doctor's testimony made clear the wounds, other than those to the knee, were not of sufficient severity to raise a legitimate concern that the victim would die. *Id.* The evidence does not support a finding that defendant, acting alone, caused serious physical injury to Lovings.

In *State v. O'Brien*, 857 S.W.2d 212 (Mo. banc 1993) [20], the court stated as follows:

"Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense ... (Citations omitted) ... Though no examples of this procedure can be found among Missouri cases, concerns of judicial economy may justify its use in a proper case."

In *State v. Nguyen, supra*, involving the same basic issue, the court applied the dicta of *O'Brien*. We find this also to be a proper case for application of that dicta. All elements of the Class B felony of assault first degree were established by the evidence and were necessarily found by the jury in arriving at its verdict. We therefore reverse the conviction for the Class A felony of assault first degree and enter a conviction for the Class B felony of assault first degree and remand for resentencing on that count alone.

Defendant's remaining points all involve the assault charge and are rendered moot by our decision.

Judgments on the robbery count and the armed criminal action counts are affirmed.

Judgment on the assault count is modified to a conviction for the Class B felony of assault first degree and as to that count remanded for sentencing to a sentence within the range provided for that offense and not greater than that recommended by the jury. *State v. Nguyen, supra.*

GAERTNER and RHODES, JJ., concur.