**STATE of Missouri, Respondent,**

v.

**Michael CRUMP, Appellant.**

No. 73745.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 12, 1999.

Douglas R. Hoff, Dist. Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

PAUL J. SIMON, Presiding Judge.

Michael Crump (defendant) appeals the judgment entered on his conviction by a jury of possession of a controlled substance with intent to distribute, deliver, or sell near a public or private elementary or secondary school, pursuant to section 195.214 RSMo 1994 (all further references shall be to RSMo 1994 unless otherwise noted), for which he was sentenced as a prior offender to a term of fifteen years' imprisonment.

On appeal, defendant contends that the trial court (1) erred in overruling his motion for judgment of acquittal at the close of all the evidence because there existed no evidence that he distributed or delivered a controlled substance within 2000 feet of a school, as required to establish a violation of section 195.214; (2) plainly erred in instructing the jury pursuant to Instruction No. 5, the verdict director, in that the instruction directed the jury to find him guilty without finding that he actually violated section 195.214, which applies only to an actual sale, delivery, or distribution of a controlled substance within 2000 feet of a school, not merely to possession with intent to distribute; (3) erred in overruling his objection to the prosecutor's

argument that defendant's money came from the sale of cocaine in that there existed no evidence that the money came from drug sales; and (4) erred in overruling defendant's objection to and motion to strike the testimony of Robert Riney, who stated that Jay Price said that defendant was "throwing something on the roof," in that Price's statement constituted inadmissible hearsay not covered by an exception to the hearsay rule. We reverse and enter new judgment and remand for resentencing.

The record, viewed in a light most favorable to the verdict, reveals that at approximately 5:00 p.m. on August 20, 1997, police officer Edward Stratton of the Hannibal Police Department received a call concerning defendant's presence in the 1600 block of Hope Street in Hannibal, Missouri. Stratton knew that there existed an active warrant for defendant's arrest. Stratton and another officer, Corporal Michael Routh, proceeded to the 1600 block of Hope Street in a "marked squad car" to look for defendant and arrest him. Upon turning onto Hope Street and spotting defendant walking down the sidewalk at a location approximately 600 feet from Eugene Field School, Routh stopped the vehicle. Stratton, wearing "dress blues," a badge, and a weapon, opened the door and advised defendant that "he was under arrest." Defendant asked why. As Stratton began to advise him, defendant opened a nearby gate, proceeded through it, and closed it behind him. When Stratton again told defendant that he was under arrest, defendant began to run.

Stratton pursued defendant on foot, jumping over a fence and proceeding east on Market Street. When Stratton reached for his radio and reported defendant's heading, defendant turned and began going west. Defendant then started to remove items from his pocket, including what looked like "a green leafy substance," which he placed in his mouth. Stratton again told defendant that he was under arrest and told him to stop. Soon thereafter, Stratton "got ... directly right behind him" and "just reached out and touched him," whereupon defendant "went right on down to his knees for [Stratton], right on down on the ground." When

defendant "got down on the ground," Stratton "had him lay down." As Stratton placed his knee against defendant's back, Stratton "could still see the green leafy substance in his mouth" and pulled some of it out of his mouth. Defendant then bit Stratton's finger, "wiggl[ed] back and forth," hit Stratton in the side of the face, stood, and started running again.

Stratton resumed pursuit of defendant, who turned a corner and proceeded down an "alleyway" toward Jay's Body Shop, a business on Market Street owned by Jay Price. Stratton "lost sight of him for just a couple of seconds" then "chase[d] him down through the driveway" of Jay's Body Shop and "back onto Market Street." Soon thereafter, Stratton caught defendant, who "finally ... went ahead down to his knees and sat there breathing heavily" near the intersection of Gordon Street and Market Street, a location approximately 925 feet from Eugene Field School. Detective Michael Lawzano and Corporal Routh then arrived, "cuffed him," and searched him. Meanwhile, Stratton began to retrace the route he had taken while pursuing defendant.

When Stratton returned to the driveway of Jay's Body Shop, Robert Riney approached him and asked if he "was looking for anything." When Stratton asked "what [was] meant by that," Riney responded, "Well, the guy that you were chasing threw something up on the roof." Stratton searched the roof and found a "small plastic baggy containing some small white rock objects," which baggy he marked as evidence and later placed in the department's evidence locker under the custody of Lieutenant Joseph Hunold. Finding nothing else, he then retraced the remainder of his route "back to the squad car" but found no additional evidence. He later wrote his report at approximately 9:00 p.m.

During the search of defendant which followed defendant's capture, Lawzano saw an officer remove a "large amount of cash" from defendant's right front pocket. The officer counted approximately $410. Lawzano then instructed Routh to transport defendant to the police department. The seized cash was delivered to the evidence locker under the custody of Lieutenant Hunold.

Later that day, Lawzano "Mirandized" defendant, who stated that he understood his rights, and proceeded to question him. When asked why he ran from Stratton and Routh, defendant said that "since they didn't tell him exactly why he was under arrest he took off running." Regarding his decision to fight Stratton after "g[e]t[ting] down on the ground" the first time, defendant stated that Stratton "didn't immediately tell him the reason for his arrest, so he did whatever he had to do to get Stratton off of him." When asked why he eventually stopped, he said that "he just felt like stopping."

Lawzano then "went into where the money came from." Defendant said that he was in St. Louis for "a couple of weeks" and just arrived in Hannibal that day. When asked if he was working in St. Louis, Hannibal, or "anywhere," defendant said, "No, I'm not." Lawzano asked, "Well, if you're not working anywhere, where did you come up with this amount of money?" Defendant answered, "I borrowed it from a friend. He loaned it to me." In response, Lawzano said, "Well, give me the friend's name, number, address; I'll contact him and confirm that because I believe the money came from drug sales, not from a loan." Defendant stated, "It's none of your business."

Additionally, Lawzano asked defendant about the baggy found on the roof of Jay's Body Shop. Defendant denied throwing the baggy on the roof. When Lawzano told defendant about the discovery of the baggy, defendant responded, "You can't prove I did it, put it up there." Three tests conducted by forensic chemist Kurt Koller of the Missouri State Highway Patrol later revealed the substance inside the baggy to be cocaine weighing 1.68 grams, which if divided into twenty dollar "rocks" would sell for approximately $300 to $350.

On September 23, 1997, the prosecuting attorney of Marion County filed an information against defendant, to wit:

The Prosecuting Attorney for Marion County, Missouri, charges that the defendant in violation of Section 195.214, RSMo. committed the Class A felony of possession of a controlled substance with intent to distribute or deliver or sell near a public or private elementary or secondary school, punishable upon conviction under Section 558.011.1(1), RSMo. [Range of punishment imprisonment in the Department of Corrections for a term not less than ten years nor more than thirty years or life imprisonment] in that on or about August 20, 1997, in the Township of Mason, County of Marion, State of Missouri, the defendant with the intent to distribute, deliver or sell, possessed cocaine, a controlled substance, knowing of its presence and illegal nature, and that such possession was within two thousand feet of the real property comprising [a] public or private elementary or secondary school, public vocational school, or a public or private junior college, college or university.

(bracketed material concerning punishment in original). With leave, on November 21, 1997, the prosecuting attorney filed an amended information in which he added an allegation that defendant is a prior offender under section 558.016.

At trial on November 21, 1997, the State presented the testimony of Stratton, Price, Riney, Lawzano, Koller, and Hunold, whose testimony included the facts already summarized. Additionally, the State offered the small plastic baggy, the seized cash, and Koller's laboratory report, all of which the trial court received in evidence.

The State offered the testimony of Price and Riney to establish that defendant possessed the small plastic baggy. On direct examination, Price testified, "[A]s [defendant] turned the corner there it looked like he threw something up. And that's what I had seen. And Bob [Riney], he seen it also." Price described what he saw as "movement of the arm" and added, "Well, after we, me and Bob was standing there, when I thought he threw something, looked like he threw something up there, Bob went over and told the police officer, reported it."

Similarly, Riney testified, "As [defendant] rounded the corner of the building it looked like that he threw something on the roof. And then I told the police officer that." When asked, "Why do you say that it looked like he was throwing something?" Riney

responded, "I believe that I saw his arm in motion. And at the same time Jay [Price] was saying, 'Look, he's throwing something on the roof.'" Defendant's attorney immediately objected to this testimony as hearsay and asked that it be stricken. The trial court overruled the objection.

At the close of the State's evidence, defendant filed a motion for judgment of acquittal, on which he deferred argument until the close of all the evidence. Defendant then rested his case without presenting any evidence and filed another motion for judgment of acquittal. In both motions, defendant argued, *inter alia*, that the information did not state facts sufficient to constitute an offense, that the State failed to prove the elements of the crime, and that all evidence and inferences therefrom did not support a finding of guilt. Following argument of both motions, the trial court denied them.

The trial court then held an instruction conference, after which defendant's attorney objected to two of the ten instructions, including Instruction No. 5, the verdict director, about which he stated, "I would just object generally to Instruction Number 5, Judge." In pertinent part, the verdict director provided as follows:

### INSTRUCTION NO. 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 20, 1997, in the Township of Mason, County of Marion, State of Missouri, the defendant possessed cocaine with the intent to distribute, deliver or sell cocaine, a controlled substance to another person, and

Second, that the defendant did so in the 2200 Block of Market Street, Hannibal, Missouri, and

Third, that this location was within two thousand feet of real property comprising Eugene Field Elementary School, an elementary school, and

Fourth, that the defendant knew that the substance he possessed was cocaine, a controlled substance, and knew of its presence and illegal nature,

then you will find the defendant guilty of possession of a controlled substance with intent to distribute or deliver or sell near schools.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

\* \* \*

The parties then argued the case to the jury. During the State's closing argument, the prosecutor stated, "Plenty of evidence to convict him of the possession of that cocaine with the intent to sell or deliver it. There's the evidence right there. Where did that money come from? It came from sale or delivery of cocaine." Defendant's attorney objected to this statement, arguing, "There's no evidence of that." The prosecutor responded, "It's a reasonable inference." The trial court overruled the objection.

Following closing argument, the jury returned a verdict of guilty. The returned verdict form read as follows:

### VERDICT

We, the jury, find the defendant Michael Lee Crump guilty of possession of a controlled substance with intent to distribute or deliver or sell near a public or private elementary or secondary school as submitted in Instruction No. 5.

/s/ Frank P. Janes

Foreman

On December 15, 1997, defendant filed a motion to dismiss and a motion for judgment of acquittal notwithstanding the jury's verdict or, in the alternative, for new trial. In his motion to dismiss the charge against him, defendant argued, *inter alia*, that sections 195.211 and 195.214, when read *in pari materia*, indicate that possession of a controlled substance with intent to deliver, whether or not near a school, is a class B felony and becomes a class A felony only if an actual delivery or distribution occurs within 2000 feet of a school. These sections provide as follows:

**195.211. Distribution, delivery, manufacture or production of a controlled substance, penalty**

1. Except as authorized by sections 195.005 to 195.425, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.

2. Any person who violates this section with respect to any controlled substance except five grams or less of marijuana is guilty of a class B felony.

3. Any person who violates this section with respect to distributing or delivering not more than five grams of marijuana is guilty of a class C felony.

**195.214. Distribution of a controlled substance near schools, penalty**

1. A person commits the offense of distribution of a controlled substance near schools if such person violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person in or on, or within two thousand feet of, the real property comprising a public or private elementary or secondary school, public vocational school, or a public or private junior college, college or university or on any school bus.

2. Distribution of a controlled substance near schools is a class A felony.

Arguing that the State had no evidence that he sold, distributed, or delivered a controlled substance to any person, defendant contended that the trial court should dismiss the charge against him because section 195.214 "does not allow a conviction for a mere intent to distribute." The trial court denied his motion.

In his motion for judgment of acquittal notwithstanding the jury's verdict or, in the alternative, for new trial, defendant argued, *inter alia*, that the trial court erred in (1) overruling his motion for judgment of acquittal at the close of all the evidence in that the State failed to establish that he violated section 195.211 by distributing or delivering a controlled substance within 2000 feet of a school, as required by section 195.214; (2)

overruling his objection to Riney's testimony that Price said, "Look, he's throwing something on the roof," in that such evidence constituted inadmissible hearsay not covered by an exception to the hearsay rule; (3) overruling defendant's objection to Instruction No. 5 in that the instruction "failed to instruct the jury that they must find beyond a reasonable doubt that defendant distributed or delivered a controlled substance within 2,000 feet of a school"; and (4) overruling defendant's objection to the prosecuting attorney's statement that the seized cash "came from sale or delivery of cocaine" in that there existed no evidence from which one could draw the inference that the seized cash "came from the sell [sic] of cocaine." The trial court denied defendant's motion and sentenced him as a prior offender to a term of fifteen years' imprisonment.

In his first point on appeal, defendant contends that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because there existed no evidence that he distributed or delivered a controlled substance within 2000 feet of a school, as required to establish a violation of section 195.214.

In its brief, the State has conceded that it "erred" in charging defendant with violating section 195.214. Acknowledging that section 195.214 "does not list 'possession with intent' as a means of violating the statute," and noting that it did not in its information charge defendant with distributing or delivering a controlled substance, the State contends that the proper remedy for its error is resentencing in accordance with the jury's verdict of "guilty of possession of a controlled substance with intent to distribute or deliver or sell near a public or private elementary or secondary school as submitted in Instruction No. 5." In contrast, defendant contends that the proper remedy is discharge because the State did not present sufficient evidence to support a conviction and did not submit a lesser included offense.

We have observed previously the special nature of section 195.214. In *State v. Wheeler*, 845 S.W.2d 678, 680 (Mo.App. E.D.1993), we noted that section 195.214 is not a strict

liability statute and does not criminalize an otherwise innocent activity. It expressly incorporates section 195.211, which defines the offense of distribution of a controlled substance, attempting to distribute a controlled substance, or possession of a controlled substance with intent to distribute. A defendant must have violated section 195.211 before consideration can be given to section 195.214. Thus, section 195.214 operates as a "penalty enhancement" provision. *Id.* at 680–81. As our Supreme Court has stated, such a provision does not create a separate crime. *State v. Hatton*, 918 S.W.2d 790, 794 (Mo.banc 1996).

Relying on the rationale stated by the *Hatton* Court, the State argues that defendant "was simply charged with a punishment enhancer which did not apply to the offense which he had committed." Nevertheless, according to the State, defendant "had been properly apprised of the offense charged, and he was able to prepare his defense." In essence, the State contends that in charging defendant with a violation of section 195.214 while listing the elements of the crime defined in section 195.211, it effectively placed him on notice of a violation of section 195.211, on which the trial court instructed the jury and for which the jury convicted defendant. Citing our decision in *State v. Dooley*, 919 S.W.2d 539 (Mo.App. E.D.1995), the State argues that we therefore may reverse defendant's conviction under section 195.214, enter a conviction under section 195.211, and remand for resentencing on the latter conviction. Defendant, however, maintains that we must discharge him.

*Dooley* involved a charge of assault in the first degree with serious physical injury, a class A felony, under section 565.050. That section provides as follows:

**565.050. Assault, first degree, penalty**

1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

The State did not choose to submit the lesser included offense of assault in the first degree, a class B felony, which does not require proof that serious physical injury was in fact inflicted. *Id.* at 540–41.

At trial, the State presented evidence that Rodney Lovings went to his former girlfriend's apartment, where several men, including Louis Dooley and Lee Cross, both armed with guns, met him. The men "escorted" Lovings from the apartment, demanded and took several of his possessions, and told him to run. As he ran, both Dooley and Cross shot at him, causing several superficial wounds and a serious life threatening wound to his leg, which sustained a severed artery. Defendant Dooley claimed that he fired no shots and that Lovings had "grabbed a gun." The parties adduced no evidence concerning the source of the bullets which struck Lovings, thereby failing to establish whether the source was Cross's gun, Dooley's gun, or both guns. *Id.* at 540.

Although the State originally charged Dooley with the crime under concepts of accessory liability, it later amended the charge, with leave, to eliminate accessory liability, thereby precluding a defense instruction positing that Cross had acted in self-defense. We observed that, in so doing, it placed upon itself the burden of establishing that Dooley alone caused the serious physical injury to Lovings. In reviewing the record, we determined that adequate evidence existed to establish that Dooley intended to kill or seriously injure Lovings and that Dooley shot at Lovings with that intention. Nevertheless, we found no conclusive evidence that Dooley, acting alone, in fact caused serious physical injury, an essential element of the class A felony described in section 565.050. *Id.* at 541.

In its brief, the State conceded that the "legal scenario" required it to establish that Dooley alone caused the serious physical injury to Lovings. Dooley contended that his conviction for assault in the first degree with serious physical injury remained unsupported by the evidence and that the trial court should have granted his motion for directed verdict at the conclusion of the evidence. *Id.*

at 540–41. In considering Dooley's argument, we invoked the following rule:

> Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

*Id.* at 542 (citing *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo.banc 1993)). Noting that proof that Dooley fired a deadly weapon at the victim is enough evidence for a jury to find him guilty of the class B felony of assault in the first degree, that the evidence at trial established all elements of this class B felony, and that the jury necessarily found these elements in arriving at its verdict, we applied the *O'Brien* rule and reversed the conviction for the class A felony, entered a conviction for the class B felony, and remanded for resentencing on the latter count alone. *Id.*

Here, as in *Dooley,* the State did not submit a lesser included offense. At trial, the State presented evidence that defendant threw a small plastic baggy containing cocaine onto the roof of Jay's Body Shop and that defendant at that time possessed approximately $410 in cash but had no employment. The State charged him with the crime described in section 195.214. In so doing, it placed upon itself the burden of establishing, *inter alia,* that defendant "violate[d] section 195.211 by unlawfully distributing or delivering any controlled substance." In reviewing the record, we find that adequate evidence exists to establish that defendant possessed a controlled substance with the intent to distribute or deliver it. Although the State "does not agree that the evidence was insufficient to show that [defendant] distributed or delivered a controlled substance," we find no conclusive evidence that defendant in fact distributed or delivered a controlled substance, an essential element of the class A felony described in section 195.214.

Proof that defendant possessed a controlled substance with the intent to distribute or deliver is sufficient evidence for a jury to find him guilty of the class B felony described in section 195.211; moreover, the evidence at trial established all elements of this class B felony and the jury necessarily found these elements in arriving at its verdict. In fact, the State established more than it had to establish under section 195.211 in that Paragraphs Second and Third of Instruction No. 5 involve elements not found in section 195.211. Therefore, application of the *O'Brien* rule is appropriate. Resentencing, rather than discharge, is the proper remedy. Point denied.

■ In his second point on appeal, defendant argues that the trial court plainly erred in instructing the jury pursuant to Instruction No. 5, the verdict director, in that the instruction directed the jury to find him guilty without finding that he actually violated section 195.214, which applies only to an actual sale, delivery, or distribution of a controlled substance within 2000 feet of a school, not merely to possession with intent to distribute.

Initially, we note that defendant in his brief has conceded that his general objection to Instruction No. 5 failed to preserve his claim of error. *See* Rule 28.03. Nevertheless, he requests review for plain error under Rule 30.20, which requires a finding that "manifest injustice or miscarriage of justice has resulted." Defendant contends that the trial court committed plain error and asks that we reverse his conviction and remand the case for a new trial.

■ As we determined in our disposition of point one, sufficient evidence existed for the jury to find each of the elements of the offense described in section 195.211; moreover, the jury had to find those elements as a prerequisite to convicting defendant of the offense described in section 195.214. Thus, under the *O'Brien* rule, even though insufficient evidence existed to convict defendant of the greater offense, we may overturn the conviction for the greater offense, enter a conviction for the lesser offense, and remand for resentencing without need of a new trial. Point denied.

■ In his third point on appeal, defendant contends that the trial court erred in overruling his objection to the prosecutor's

argument that defendant's money came from the sale of cocaine in that there existed no evidence that the money came from drug sales.

The trial court has broad discretion in controlling closing argument, with wide latitude accorded counsel in their summaries. *State v. Boyle*, 970 S.W.2d 835, 837 (Mo.App. E.D.1998). Prosecutors are entitled to argue matters supported by the evidence and reasonable inferences therefrom. Absent abuse of discretion resulting in prejudice to the defendant, trial court rulings on such issues should not be overturned on appeal. *Id.* at 837–38.

Defendant characterizes the prosecutor's argument concerning the source of the seized cash as a misstatement and perversion of the evidence and as "unsworn testimony." A review of the record shows otherwise. The prosecutor was entitled to present an argument based on the reasonable inference that defendant's possession of cocaine and approximately $410 in cash, combined with his unemployed status and his refusal to identify the source of the cash, suggested that his money "came from sale or delivery of cocaine." Therefore, the trial court did not abuse its discretion in overruling defendant's objection to this argument. Point denied.

In his fourth and final point on appeal, defendant argues that the trial court erred in overruling his objection to and motion to strike the testimony of Riney, who stated that Price said that defendant was "throwing something on the roof," in that Price's statement constituted inadmissible hearsay not covered by an exception to the hearsay rule.

In matters involving the admission of evidence, the appellate court reviews for prejudice and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Richardson*, 923 S.W.2d 301, 311 (Mo.banc 1996). Any error in admitting evidence is not considered prejudicial when similar evidence is properly admitted elsewhere in the case or has otherwise come into evidence without objection. *State v. Brown*, 949 S.W.2d 639, 642 (Mo.App. E.D. 1997).

Hearsay is any out-of-court statement offered to prove the truth of the matter asserted. *Richardson*, 923 S.W.2d at 311. Generally, courts exclude hearsay because the out-of-court statement is not subject to cross-examination, is not offered under oath, and is not subject to the fact finder's ability to judge demeanor at the time the statement is made. *Bynote v. National Super Markets, Inc.*, 891 S.W.2d 117, 120 (Mo.banc 1995). Nonetheless, exceptions to the general prohibition against hearsay may apply when circumstances conspire to assure the trustworthiness of the declarant's statement despite the absence of cross-examination, the oath, and the fact finder's ability to observe the declarant's demeanor. *Id.* For example, courts commonly accept an out-of-court statement which constitutes a declarant's present sense impression, "a declaration uttered simultaneously, or almost simultaneously, with the occurrence of the act." *See Id.* at 120–21; *see also Black's Law Dictionary* 1470 (4th ed. rev.1968).

Here, Price's statement, "Look, he's throwing something on the roof," constituted hearsay because Price made it out of court and because the State offered it to prove that defendant actually threw something on the roof. Nevertheless, the record indicates that Price made the statement "at the same time" when Riney believed that the latter "saw [defendant's] arm in motion." Under such circumstances, Price's statement qualifies as a present sense impression. Moreover, both Riney and Price testified at trial and were subject to cross-examination. Furthermore, Riney recited Price's statement after the State presented all of the following evidence, to none of which defendant objected: (1) Stratton testified that Riney stated, "Well, the guy that you were chasing threw something up on the roof"; (2) both Price and Riney testified that "it looked like" defendant threw something; (3) both Price and Riney described what they saw as "motion" or "movement" of defendant's arm; and (4) Price testified that Riney also saw what the former described. We cannot say that the trial court erred in admitting Price's statement and that defendant thereby suffered

prejudice when the trial court already had admitted such similar evidence without objection from defendant. Point denied.

In light of our disposition of points one and two, we reverse defendant's conviction of distribution of a controlled substance near schools, a class A felony, enter a conviction of possession of a controlled substance with intent to distribute, a class B felony, and remand for resentencing on this conviction.

Judgment reversed, new judgment entered, and remanded for resentencing.

KATHIANNE KNAUP CRANE, J. and LAWRENCE E. MOONEY, J., concur.