

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| CITY OF ST. PETERS, MISSOURI, | ) | No. ED100701 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | 1311-MU00010 |
| | ) | |
| BONNIE A. ROEDER, | ) | Honorable Ted House |
| | ) | |
| Respondent. | ) | Filed: June 3, 2014 |

## OPINION

The City of St. Peters ("City") appeals the trial court's judgment dismissing City's prosecution of Bonnie A. Roeder under St. Peters City Code section 335.095[1] ("Camera Ordinance") for a failure to stop at a red light. We affirm.

## I.    BACKGROUND

City enacted the Camera Ordinance authorizing the installation of an automated red light enforcement system consisting of cameras and vehicle sensors capable of producing images recording a vehicle running a red light. Code section 335.095(A). The automated red light enforcement system established under the Camera Ordinance produces images recording the offending vehicle's operator in addition to the offending vehicle's license plate number. *Id*. The

---

[1] All references to code sections are to St. Peters City Code (2007).

images are then reviewed by a police officer to determine if a violation of City's traffic code has occurred. Code section 335.095(D). If it is determined that a violation has occurred, "the officer may use any lawful means to identify the vehicle's owner" and serve a summons on the vehicle's owner within sixty days of the violation. Code section 335.095(D)-(E). The Camera Ordinance creates an offense, punishable by a fine of not more than $200, for a person who "fails to comply with the City Traffic Code and the violation is detected through the automated red light enforcement system." Code section 335.095(G). "In no case shall points be assessed against any person, pursuant to section 302.302 RSMo, for a conviction of a violation" under the Camera Ordinance. *Id*. The offense created under the Camera Ordinance is wholly separate from an offense under City's already established traffic code which states, in relevant part, "[t]he driver of any vehicle shall obey the instructions of any official traffic control device." Code section 315.030.

Roeder was issued a summons and notice of violation after images recorded by the automated red light enforcement system depicted a vehicle registered to Roeder running a red light. The summons and notice of violation was titled "City of St. Peters, MO Red Light Photo Enforcement Program" and indicated that a vehicle registered in Roeder's name was in violation of code sections 335.095 and 315.030 described as "automated red light enforcement/failure to obey traffic control signal" ("Count I"). Roeder was informed that no points would be assessed to her driving record and that no record of the violation would be sent to the Department of Revenue. The instructions warned that "[i]t is sufficient evidence of the St. Peters City Code Section 335.095, that the person registered as the owner of the vehicle was operating the vehicle at the time of the violation" and provided Roeder with three options: (1) pay a fine amount of

$110; (2) submit an affidavit of non-responsibility; or (3) appear in court on July 31, 2012 to have the matter reviewed by a municipal judge.

After Roeder failed to complete any of the options, the matter was set for municipal court in September 2012. Roeder failed to appear in court and City charged Roeder with the additional violation of failure to appear ("Count II"). The trial court certified the case for a jury trial, and Roeder filed a motion to dismiss arguing, in relevant part, that the Camera Ordinance was void for being in conflict with state law regarding the assessment of points to a driver's license. The trial court denied the motion, and the cause proceeded to trial. The trial court acquitted Roeder on Count II and instructed the jury with the following:

> If you find and believe from the evidence beyond a reasonable doubt:
> First, that on June 7, 2012, in the City of St. Peters, County of St. Charles, State of
>     Missouri, [Roeder] failed to stop at a red light, and
> Second, such failure was detected through the automated red light enforcement
>     system,
> then you will find the defendant guilty.

The jury found Roeder guilty on Count I and recommended a fine of $110. Thereafter, this Court issued its ruling in *Unverferth v. City of Florissant*, declaring a similar municipal ordinance in conflict with state law. 419 S.W.3d 76, 98 (Mo. App. E.D. 2013). Roeder filed a renewed motion for acquittal, arguing that Count I should be dismissed under the reasoning in *Unverferth*. The trial court, treating the motion as a renewed motion to dismiss, agreed with Roeder and dismissed Count I, finding that the Camera Ordinance was in conflict with state law and void as applied to Roeder. City appeals.

## II.    DISCUSSION

City raises four points on appeal, challenging the trial court's dismissal of Count I against Roeder. We review the trial court's decision to dismiss de novo. *Otte v. Edwards*, 370 S.W.3d 898, 900 (Mo. App. E.D. 2012).

3

**A.	The Camera Ordinance is Void**

City's first, second, and third points on appeal claim the trial court erred in dismissing Count I on the ground that the Camera Ordinance is void for being in conflict with Missouri law regarding the assessment of points on a driver's license.  We disagree.

Pursuant to section 71.010 RSMo 2000,[2] a municipality "shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject."  It is well established that a municipal ordinance that conflicts with the general laws of the state is void.  *McCollum v. Director of Revenue*, 906 S.W.2d 368, 369 (Mo. banc 1995).  A conflict exists when the ordinance "permits what the statute prohibits or prohibits what the statute permits."  *Unverferth*, 419 S.W.3d at 97 (internal quotation omitted).  "When the expressed or implied provisions of the ordinance and state law are inconsistent and in irreconcilable conflict, the statute annuls the ordinance."  *Id*.

In this case, Roeder argued, and the trial court agreed, that the Camera Ordinance was in conflict with section 302.302 RSMo Supp. 2010[3] regarding the assessment of points for moving violations.  Section 302.302.1(1) establishes Missouri's point system for the suspension and revocation of licenses and indicates that two points shall be assessed to the driver's license of any person who commits a moving violation of a municipal ordinance.  A moving violation is defined as "that character of traffic violation where at the time of violation the motor vehicle involved is in motion."  Section 302.010(13) RSMo Supp. 2013.[4]

**1.	The Camera Ordinance is in Conflict with Section 302.302**

---

[2] Unless otherwise provided, all statutory references are to RSMo 2000.
[3] All references to section 302.302 are to RSMo Supp. 2010.
[4] All references to section 302.010 are to RSMo Supp. 2013.

In its first and second points on appeal, City claims the trial court erred in dismissing Count I because the Camera Ordinance does not conflict with section 302.302. City argues that the assessment of points under section 302.302 is directory and not mandatory and contends that section 302.302 permits the Director of Revenue discretion to classify certain offenses as non-point offenses. City's argument is premised on language in section 302.302.1 which gives the Director the task of putting "into effect a point system for the suspension and revocation of licenses." This language, according to City, leaves the ultimate determination of whether points should be assessed to the Director. City then relies on reports,[5] instructing that points should not be assessed for red light camera violations, to support its argument that the Director has exercised his discretion to refrain from assessing points for violations of automated red light camera ordinances. According to City, because the Director has designated red light violations detected by automated cameras as non-point violations, the Camera Ordinance is not in conflict with Missouri law regarding the assessment of points.

Even assuming *arguendo*, that the Director has interpreted section 302.302 to permit him discretion to classify violations of red light camera ordinances as non-point offenses, this Court must correct an agency's erroneous interpretations of law using our independent judgment. *In re Laclede Gas Co.*, 417 S.W.3d 815, 819 (Mo. App. W.D. 2014). Section 302.302.1(1) states that the Director "shall put into effect a point system for the suspension and revocation of licenses" and "[p]oints shall be assessed . . . as follows: [a]ny moving violation of a . . . municipal . . . traffic ordinance . . . 2 points." Generally, the use of the word "shall" in a statute prescribes a mandatory duty. *R.B. v. S.W.*, 394 S.W.3d 429, 432 (Mo. App. E.D. 2012). "However, when the legislature has not prescribed a sanction for noncompliance, the use of the word 'shall' does not

_____

[5] The reports cited by City include Volume 75, Summer 2008, of the Missouri Association for Court Administration Reporter and the Missouri Charge Code Manual.

5

automatically make compliance mandatory." *Id.* Instead, Courts must look to the context of the statute to ascertain legislative intent. *Id.*

Here, in analyzing the legislative intent behind section 302.302, we note that the purpose of the point system established by section 302.302 is the protection of the public from dangerous drivers. *James v. Director of Revenue*, 893 S.W.2d 406, 407 (Mo. App. W.D. 1995) (quoting *Rudd v. David*, 444 S.W.2d 457, 459 (Mo. 1969)). Because a system without a mandatory assessment of points would do little to protect the public, we find that the context of "shall" in section 302.302 indicates a legislative intent to mandate the assessment of points for certain offenses. *See Brown v. Director of Revenue*, 97 S.W.3d 82, 84 (Mo. App. S.D. 2002) (stating that the Director has "no discretion from revoking [] driving privileges where the accumulation of points meets the statutory amount") (internal quotation omitted).

Our reading of the legislative intent behind the assessment of points is confirmed by this Court's interpretation of section 302.302 in *Edwards v. City of Ellisville*, 2013 WL 5913628 at *17 (Mo. App. E.D. 2013). In ascertaining the legislative intent of the use of "shall" in section 302.302, the Court in *Edwards* explained that section 302.302 "*requires* the assessment of two points on the driver's license of any person who is convicted of a moving violation of a municipal ordinance" and "[m]unicipalities lack the authority to alter this statutory *mandate*." *Id.* (emphasis added). *See also Brunner v. City of Arnold*, 2013 WL 6627959 at *23 (Mo. App. E.D. 2013) (stating '[s]ection 302.302.1(1) *requires* the Department of Revenue to assess two points against the driver's license of any person convicted of a moving violation") (emphasis added); *Unverferth*, 419 S.W.3d at 97 (finding that the "plain language of [section 302.302] *requires* any municipal ordinance violation occurring while the vehicle is in motion be assessed two points") (emphasis added); *Damon v. City of Kansas City*, 419 S.W.3d 162, 186 (Mo. App. W.D. 2013)

6

(stating that section 302.302.1(1) "*requires* the Department of Revenue to assess two points against the driver's license of any person convicting of a moving violation") (emphasis added). Accordingly, the assessment of two points under section 302.302 for a conviction of a moving violation of a municipal ordinance is a mandatory requirement, leaving no discretion for the Director to classify it as a non-point offense.

The Camera Ordinance, through the creation of an "automated red light enforcement system," attempts to regulate conduct that is "quite simply and unambiguously, running a red light." *Unverferth*, 419 S.W.3d at 98. "Common sense and collective experience suggest that a person cannot fail to stop at a red light without being in motion." *Id.* Therefore, a violation of the Camera Ordinance constitutes a moving violation as defined in section 302.010(13). Under the plain language of the Camera Ordinance, however, no points shall be assessed against a violator's license. This is in clear conflict with section 302.302 because the Camera Ordinance permits what section 302.302 prohibits – a moving violation without the assessment of points on an offender's license. *See Brunner*, 2013 WL 6627959 at *23 (finding a similar ordinance in conflict with Missouri law under section 302.302); *Edwards*, 2013 WL 5913628 at *17 (same); *Unverferth*, 419 S.W.3d at 98 (same); *Damon*, 419 S.W.3d at 186-87 (same). Because the Camera Ordinance is in conflict with Missouri law under section 302.302, the Camera Ordinance is void.

## 2. The Camera Ordinance is not Severable

Nevertheless, in its third point on appeal, City argues that even if the trial court was correct in finding the Camera Ordinance in conflict with section 302.302, Count I should not have been dismissed where the offending portion of the Camera Ordinance, namely the provision

7

prohibiting the assessment of points, could have been severed from the remainder of the Camera Ordinance.

When analyzing severability, Courts look to section 1.140. *State v. Hart*, 404 S.W.3d 232, 245 (Mo. banc 2013). Section 1.140 states, in relevant part:

> If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Section 1.140 has been adopted as the test for the severability of ordinance provisions. *Avanti Petroleum, Inc. v. St. Louis County*, 974 S.W.2d 506, 512 (Mo. App. E.D. 1998). In this case, the Camera Ordinance contains a severability clause, stating, in relevant part, that if any provision of the Camera Ordinance is found invalid, all remaining portions of the Camera Ordinance shall be valid, "it being the intent of the Board of Alderman that it would have enacted [the Camera Ordinance] without the invalid or unenforceable provisions."[6] City argues that the severability clause renders the Camera Ordinance severable where it clearly expresses the intent of the board of alderman to pass the ordinance even if any provision is invalid or unenforceable.

We are not persuaded that the severability doctrine applies in this case. Under the express terms of section 1.140, severability only applies when a statute or ordinance is rendered unconstitutional. *See also Hart*, 404 S.W.3d at 246 n.11 ("severance only applies when a statute is unconstitutional"); *Avanti Petroleum*, 974 S.W.2d at 512 (adopting section 1.140 as the test for severability of an *unconstitutional* ordinance provision) (emphasis added). In this case, however,

---

[6] The severability clause actually appears in St. Peters City Ordinance 4536, the ordinance establishing code section 335.095.

we are not holding that the Camera Ordinance is unconstitutional.  Instead, our holding under section II.A.1 above is that the Camera Ordinance is void as a result of being in conflict with Missouri law under section 302.302.

The rule rendering ordinances void when in conflict with state law is established by statutory law and the common law adopted by our Courts.  *City of Richmond Heights v. Shackelford*, 446 S.W.2d 179, 180 (Mo. App. 1969); section 71.010.  Specifically, City, as a non-charter city,[7] derives its power from the legislature's enactment of laws.  *City of Arnold v. Tourkakis*, 249 S.W.3d 202, 205 (Mo. banc 2008).[8]  Accordingly, City's power to enact ordinances must be exercised under the authority granted by the general assembly.  *Brunner*, 2013 WL 6627959 at *15.  Because section 71.010 limits City's authority to enact ordinances to those that are in harmony with state law, any City ordinance that conflicts with state law is one that is enacted outside the scope of City's authority.  *See Page Western, Inc. v. Community Fire Protection Dist. of St. Louis County*, 636 S.W.2d 65, 67 (Mo. banc 1982) (an ordinance in conflict with state law is enacted without authority).  An ordinance enacted outside City's authority is invalid.  *Clifford Hindman Real Estate, Inc., v. City of Jennings*, 283 S.W.3d 804, 809 (Mo. App. E.D. 2009).  Indeed, as previously indicated under section II.A. above, when determining whether an ordinance and a statute are in conflict, case law instructs that "when the expressed or implied *provisions* of each are inconsistent and in irreconcilable conflict, then the statute annuls the *ordinance*."  *Brunner*, 2013 WL 6627959 at *21 (internal quotation omitted) (emphasis added).  "The effect of the ordinance being in violation of the state statute is that the ordinance is void and unenforceable *ab initio*."  *Id*. at *8 (internal quotation omitted).  Because

_____

[7] City is a fourth-class city organized under section 79.010.
[8] In contrast, a charter city derives its power directly from article VI, section 19(a) of the Missouri Constitution. *Tourkakis*, 249 S.W.3d at 205; article VI, section 19(a) of the Missouri Constitution (stating that "[a]ny city which adopts or has adopted a charter for its own government, shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city").

we have determined that a provision of the Camera Ordinance is in conflict with Missouri law under section 302.302, the entire Camera Ordinance is void and unenforceable as a matter of statutory and common law. Therefore, the doctrine of severability does not apply in this case.

Even assuming that the doctrine of severability did apply, we are not convinced that the provision prohibiting the assessment of points would be severable from the remaining provisions of the Camera Ordinance. Under section 1.140, a provision is not severable if the remaining provisions of the ordinance would be "incapable of being executed in accordance with the legislative intent." Under a severed version of the Camera Ordinance, a violation would be considered a moving violation requiring the assessment of points on a license even where City clearly did not intend to create such a violation. Notwithstanding the severability clause, this Court is not justified in "rewriting a[n ordinance] to authorize what its plain language now forbids, even if the Court somehow could be sure that this is what the legislature would have done." *Hart*, 404 S.W.3d at 245.

### 3. Conclusion

Section 302.302 creates a mandatory requirement that two points be assessed on the driver's license of any person convicted of a moving violation of a municipal ordinance, and a violation of the Camera Ordinance constitutes a moving violation under section 302.010(13). Because the Camera Ordinance states that no points shall be assessed upon a conviction, it permits what section 302.302 prohibits – a moving violation without the assessment of points on a license. Therefore, the Camera Ordinance is in conflict with section 302.302 and is rendered void under statutory and common law relating to a municipality's authority to enact ordinances. Moreover, the portion of the Camera Ordinance in conflict with section 302.302, namely the provision prohibiting the assessment of points, is not severable from the remaining provisions of

10

the Camera Ordinance. The severability doctrine only applies to provisions that are rendered unconstitutional, and the holding that the offending provision of the Camera Ordinance is in conflict with section 302.302 is not a finding that the provision is unconstitutional. Even if the severability doctrine did apply, the offending provision would not be severable where the remaining provisions of the Camera Ordinance would be incapable of being executed in accordance with legislative intent. Accordingly, the trial court did not err in dismissing Count I on the ground that the Camera Ordinance is void for being in conflict with Missouri law. Points one, two, and three are denied.

**B.      A Conviction cannot be Entered under Code Section 315.030**

It its fourth and final point on appeal, City claims the trial court erred in dismissing the action because Roeder was found guilty under code section 315.030 in addition to the Camera Ordinance. Under code section 315.030, "[t]he driver of any vehicle shall obey the instructions of any official traffic control device." According to City, even if the trial court correctly refused to enforce the Camera Ordinance, in full or as severed, the trial court should have upheld the jury's verdict under code section 315.030. We disagree.

City's argument is premised on the assertion that Roeder was charged with violating both the Camera Ordinance and code section 315.030. Although the summons and notice of violation lists both code sections 335.095 and 315.030 as being violated, we find that Roeder was only charged with a violation of the Camera Ordinance. The inclusion of code section 315.030 appears only for the purpose of satisfying the Camera Ordinance's reference to the traffic code: "[a] person commits an offense under [the Camera Ordinance] when such person fails to comply *with the City Traffic Code* and the violation is detected through the automated red light

11

enforcement system." (emphasis added). We are compelled to this conclusion for the following reasons.

The summons and notice of violation is titled "City of St. Peters, MO Red Light Photo Enforcement Program" and, together with the accompanying instructions, references are made to "automated red light enforcement" or the "red light photo enforcement program." Moreover, the instructions indicate that "[i]t is sufficient evidence of the *St. Peters City Code Section 335.095*, that the person registered as the owner of the vehicle was operating the vehicle at the time of the violation." (emphasis added).[9] These references are a clear indication of City's intent to pursue a conviction for a violation detected through the automated red light enforcement system. As noted, a violation of City's traffic code that is detected through the automated red light enforcement system is a wholly separate offense created under the Camera Ordinance. Furthermore, the notice of violation, consistent with the Camera Ordinance, expressly notes that no points would be assessed to Roeder's driver's license. Because a prosecution under code section 315.030 would have required the assessment of points to Roeder's license, the charge could not have included code section 315.030.

Perhaps more indicative of City's intent to charge Roeder under the Camera Ordinance, rather than code section 315.030, is the listed fine amount of $110. While this penalty is allowed under the Camera Ordinance, which allows a fine of up to $200, such a penalty is not permitted for a violation of code section 315.030. Because code section 315.030 does not expressly

---

[9] The Camera Ordinance is silent on the issue of whether a vehicle's registered owner is presumed to be the operator of the vehicle at the time of the red light violation. However, City appears to operate on the basis of a rebuttable presumption that a registered owner was the operator of the vehicle at the time of the violation. City instructs alleged violators that "[a]s the registered owner . . . of the vehicle . . . we have no choice but to hold you responsible for paying this fine." Although City claims to "have no choice" in the placement of liability on registered owners, City, in an apparent effort to extend owners some resemblance of due process, offers owners options to avoid liability. Owners are instructed that, "[o]f course, if you were not the driver at the time of the violation," you may escape liability by "appear[ing] in Court to identify another driver" or completing an "Affidavit of Non-Responsibility." We have serious doubts that this would pass constitutional muster. *See Brunner*, 2013 WL 6627959 at *23-27.

provide a punishment, a violation of that section would be punishable by City's general penalty provision. The general penalty provision for a violation of a code section enacted under the Model Traffic Ordinance[10] is contained in Ordinance Number 496 and provides for a fine of up to $100.

We also note that the parties and trial court proceeded to trial on an apparent understanding that the prosecution was based on a violation of the Camera Ordinance. Roeder's motion to dismiss indicated that she was charged for an alleged red light camera ticket violation under the Camera Ordinance and City admitted, in its response to Roeder's motion to dismiss, that "[t]his case is before this court . . . on prosecution for violation of section 335.095 of the St. Peters City Code." More importantly, the jury was instructed to find Roeder guilty if it found that Roeder failed to stop at a red light and the failure was detected through the automated red light enforcement system. This instruction mirrored the elements required for a conviction under the Camera Ordinance, not code section 315.030. The trial court confirmed the conviction in its judgment, indicating that Count I was a charge of failing to stop at a red light enforced by an automated red light camera under the Camera Ordinance.

Nevertheless, City contends that a conviction can be entered under code section 315.030 because City proved, and the jury necessarily found, that Roeder ran a red light and therefore violated code section 315.030. City relies on *State v. Crump*, 986 S.W.2d 180 (Mo. App. E.D. 1999). In *Crump*, the defendant appealed his conviction of possession of a controlled substance with intent to deliver near a school, pursuant to section 195.214 RSMo 1994. *Id*. at 181. On appeal, the Court explained that it was error to charge the defendant under section 195.214 because section 195.214 only applies to actual delivery of a controlled substance, rather than

---

[10] Code section 315.030 was enacted as a part of City's adoption of the Model Traffic Ordinance under Chapter 300 RSMo. *See* section 300.140.

13

possession with the intent to deliver. *Id*. at 185. Nevertheless, the Court found that, although there was no evidence to support a finding under section 195.214 that the defendant in fact delivered a controlled substance, the State proved, and the jury found, that the defendant possessed a controlled substance with the intent to deliver. *Id*. at 187. Therefore, the Court found that it was appropriate to enter a conviction under section 195.211 RSMo 1994 for possession of a controlled substance with intent to deliver. *Id*.

City's reliance on *Crump* is misplaced. In reaching its decision, the *Crump* Court relied on the rule stating that "[w]here a conviction of a greater offense has been *overturned for insufficiency of the evidence*, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense." *Id*. (internal quotation omitted) (emphasis added). In this case Roeder's conviction under the Camera Ordinance was not overturned because of insufficiency of the evidence but because the Camera Ordinance is void for being in conflict with State law. Accordingly, *Crump* does not aid City. *See State v. Pullum*, 281 S.W.3d 912, 917-18 (Mo. App. E.D. 2009) (declining to apply the rule where the defendant's conviction was not overturned because of insufficiency of the evidence but because of a fatal variance between the charging document and the conviction).

City chose to pursue Roeder's prosecution under the Camera Ordinance rather than code section 315.030. A prosecutor has broad discretion to determine when, if, and how criminal laws are to be enforced, and this discretion is seldom subject to judicial review. *State v. Clinch*, 335 S.W.3d 579, 583 (Mo. App. W.D. 2011). We are especially hesitant to interfere with City's decision where the penalty for a violation of code section 315.030, requiring the assessment of

14

points, would arguably be more severe and the evidence implicating Roeder was obtained under procedures established by an invalid ordinance. Point four is denied.

## III.   CONCLUSION

The judgment dismissing City's prosecution of Roeder under the Camera Ordinance for failure to stop at a red light is affirmed.

_____
GLENN A. NORTON, Judge

Roy L. Richter, P.J. and
Clifford H. Ahrens, J., concur

15