**STATE of Missouri, Respondent,**

v.

**Raymond WHITE, Appellant.**

**No. WD 57470.**

Missouri Court of Appeals, Western District.

Aug. 22, 2000.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 2000.

Application for Transfer Denied Oct. 31, 2000.

Vanessa Caleb, Jeannie Willibey, Asst. Public Defenders, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, for Respondent.

Before Before EDWIN H. SMITH, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Raymond A. White appeals from his convictions and sentences following a jury trial for three counts of delivery of a controlled substance within 2000 feet of a school, § 195.214[1], and one count of possession of a controlled substance with an intent to distribute, § 195.211. The court sentenced White as a prior and persistent offender to concurrent sentences of thirty years imprisonment on each of the four counts.

Because White challenges the sufficiency of the evidence, we review the facts in the light most favorable to the verdict. *State v. Johnston*, 957 S.W.2d 734, 747 (Mo. banc 1997).

---

1. All statutory references are to the Revised Statutes of Missouri (Cum.Supp.1999), unless otherwise indicated.

On the evening of September 29, 1998, Detective Robert Browning, an undercover officer with the Kansas City Missouri Police Department Street Narcotics Unit, went to a residence at 4141 North Winn in Kansas City, Missouri, attempting to purchase narcotics from Ishman Tice. Detective Browning knocked on the back door, and White opened the door and asked him if he was "trying to get some bud," meaning marijuana. Detective Browning told White yes, and White told him to go around to the front door. Browning went to the front door, and White invited him inside. He asked Browning what he wanted, and Browning said "20," meaning $20 worth of marijuana.

The men went into the kitchen, and White removed a bread sack from a kitchen drawer. Inside the bread sack, two other sacks each contained fifteen to twenty individually wrapped marijuana bags. White handed Browning two of the bags in exchange for a $20 bill. Browning then asked White if he ever got any "hard," referring to crack cocaine. White said yes, and he told Browning that he sells it a gram at a time for $50. White told him that if he wanted to purchase any to "just come through" because "[w]e're here all the time." Detective Browning then left the residence. Field and laboratory tests confirmed the presence of marijuana in the substance Browning purchased from White.

The following evening, September 30, 1998, Detective Browning returned to the residence at 4141 North Winn. He approached the residence as two women were leaving. As he told the women that he was there to see "Ish," White came to the door and told him to come in. Browning walked into the living room and some men in the room shut the front door and locked it. White began patting him down. Browning pushed him back and asked him what he was doing. White responded that he was making sure that he was not a police officer. Detective Browning thought White may throw a punch at him,

but White just pushed his chest against Browning's shoulder. Browning told him that he was just there to get his $50 worth of crack. White said okay, and he went into the kitchen. A blanket now separated the kitchen from the living room, and White and three other men would not let Browning into the kitchen. White returned from the kitchen and handed Browning a chunk of crack. Browning set $50 on a chair next to White and left. The substance tested positive for cocaine.

The next evening, October 1, 1998, Detective Browning returned once again to the residence to make his third and final drug buy from White. Browning knocked on the door, and a man answered the door and asked whom Browning was there to see. He answered that he wanted to see "Ish," and the man let him come inside. Browning met White inside and told him that he was there to get another "50 hard," meaning crack cocaine. White said okay, and Browning then asked him how much White would charge him for an "8–ball," an ⅛ ounce of crack cocaine. White asked the other man what he thought, and he answered about $150. White went into the kitchen, then came back and handed Browning the crack in exchange for $50. Laboratory tests later confirmed the substance White gave Browning contained cocaine. The men started talking about the 8–ball again and asked Browning if he could get guns in exchange for crack. Browning told them that he could get them guns.

After he left the residence, Detective Browning radioed the Street Narcotics Tactical Team, which waited in a van about a block away, to notify them that it was a "good deal." The police had previously obtained a search warrant and proceeded to execute it. The Tactical Team surrounded the residence and then entered it pursuant to the warrant. No one was seen leaving the residence during this process. White, Anthony Stanley, and Shana Sutgrey were inside the house, and the police took the three of them into custody. The

police brought all three outside for a line-up, and Detective Browning identified White as the man who had sold him the drugs at each of the drug buys. Pursuant to a search of the residence, the police found 97.42 grams of marijuana in the kitchen drawer. The search also revealed money and a bag of a white powdered substance in the toilet.

At trial, Detective Reed Buente, a member of the Gang Squad of the Kansas City, Missouri Police Department, testified that he used computer mapping software to make a map of the area surrounding the residence at 4141 North Winn. The map shows the relationship of the house at 4141 North Winn to two schools in the neighborhood. Specifically, the map indicates that Eastgate Middle School is 896 feet away from the residence, and Winwood Elementary is 1920 feet away.

Detective Browning testified that the residence at 4141 North Winn is within 2000 feet of a school and that he knew the residence was this close to a school because of the department's mapping system. He testified that the computer mapping system allows a user to input any Kansas City address and receive a map of any schools in the area and the exact distance from the schools to the input address.

At the close of the State's evidence, White moved for a judgment of acquittal, arguing that the State failed to prove that White knew he was within 2000 feet of a school. The court overruled his motion.

White relied on a theory of misidentification at trial. White called Anthony Stanley as a defense witness. Stanley, who was in the residence when the search warrant was executed, testified that he saw Ishman Tice run past him and jump out a window when the police entered the residence to conduct the search. White testified in his own defense, claiming that Ishman Tice, not White, sold the detective the drugs on each of the three occasions. He also testified that Tice fled out the window when the police arrived. White claimed that he had not been to the residence at 4141 North Winn prior to October 1, 1998. White said he had known Tice for approximately one year.

In rebuttal, the State called Detective Fred Phillips of the Kansas City, Missouri Police Department. He testified that he did not see or hear anyone escape from the residence while the search warrant was being executed and that he did not see any broken or open windows. He also testified that White told him that he had known Tice for two years and that he had been frequenting the residence at 4141 North Winn for the past several months.

At the close of all evidence, White moved again for a judgment of acquittal, arguing the State failed to prove that he had knowledge of a school within 2000 feet of the residence. The court denied his motion.

The jury found White guilty of all four counts, and the court sentenced White as a prior and persistent offender to concurrent sentences of thirty years imprisonment on each count. White timely appealed.

■ "In determining the sufficiency of the evidence on appeal, this Court must view the evidence in the light most favorable to the verdict, accepting as true all of the State's evidence, giving the State the benefit of all inferences therefrom and disregarding all evidence and inferences contrary to a finding of guilt." *Johnston*, 957 S.W.2d at 747; *State v. Trotter*, 5 S.W.3d 188, 191 (Mo.App. W.D.1999). Our review is limited to determining whether sufficient evidence was presented for a reasonable juror to find the defendant guilty. *State v. Storey*, 901 S.W.2d 886, 895 (Mo. banc 1995).

■ In his first point on appeal, White claims the trial court erred in overruling his motion for judgment of acquittal because the State failed to introduce sufficient evidence to prove beyond a reasonable doubt that White knowingly delivered controlled substances within 2000 feet of a school. Specifically, he asserts that the

State failed to prove that he knew that the residence at 4141 North Winn was located within 2000 feet of a school. Section 195.214 provides that:

> [a] person commits the offense of distribution of a controlled substance near schools if such person violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person in or on, or within two thousand feet of, the real property comprising a public or private elementary or secondary school, public vocational school, or a public or private junior college, college or university or on any school bus.

*§ 195.214.1.* A defendant must have violated § 195.211 before a defendant may be convicted and sentenced under § 195.214. *State v. Crump,* 986 S.W.2d 180, 186 (Mo. App. E.D.1999). Section 195.211 provides, in pertinent part, that "...it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." *§ 195.211.1.*

 Section 195.214 acts as a "penalty enhancement" provision, and it does not create a separate crime. *State v. Hatton,* 918 S.W.2d 790, 794 (Mo. banc 1996); *Crump,* 986 S.W.2d at 186. Section 195.214 incorporates the elements of § 195.211 and adds the additional requirement that defendant's actions take place within 2000 feet of a school. In addition, § 195.214 is not a strict liability statute. *Crump,* 986 S.W.2d at 185–86; *State v. Wheeler,* 845 S.W.2d 678, 680 (Mo.App. E.D.1993). Although sections 195.214 and 195.211 do not specifically mention a requisite mental state, § 562.021.3 provides that "if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is

established if a person acts purposely or knowingly; but reckless or criminally negligent acts do not establish such culpable mental state." Therefore, in order for a defendant to be found guilty under either § 195.214 or § 195.111, he must have acted purposely or knowingly. A person acts "knowingly" or with knowledge when, concerning his conduct or attendant circumstances, he is aware of the nature of his conduct or that those circumstances exist. *§ 562.016.3,* RSMo (1994); *State v. Garrison,* 975 S.W.2d 460, 461 (Mo.App. S.D. 1998). Knowledge may be proven by circumstantial evidence. *State v. Yahne,* 943 S.W.2d 741, 745 (Mo.App. W.D.1997).

The trial court properly used MAI–CR 3d 325.30 (10–1–98) to instruct the jury on the three counts of delivering a controlled substance within 2000 feet of a school. Under this instruction, the jury may find the defendant guilty of delivering a controlled substance within 2000 feet of a school only if it finds the defendant: (1) delivered a controlled substance, (2) within 2000 feet of a school, and (3) defendant did so knowingly with regard to all of the facts and circumstances.[2] The court also instructed the jury on the lesser included offense of delivery of a controlled substance on Counts I, II, and III.

White claims the State failed to present sufficient evidence that he knowingly delivered a controlled substance within 2000 feet of a school. He argues that the only evidence the State presented was testimony by Kansas City Missouri Police officers regarding a map showing the distance from the 4141 North Winn residence to Eastgate Middle School. White does not dispute the computed distance between the residence and the school, but he challenges the sufficiency of this evidence to establish that he knowingly delivered the controlled substances within 2000 feet of a school.

---

**2.** Prior to this 1998 revision, the MAI–CR 3d 325.30 instruction required that the defendant: (1) deliver a controlled substance, (2) at a given location, (3) the specified location was within 1000 feet of a school, and (4) the defendant knew that the substance was a controlled substance. The instruction did not require the defendant to know that the delivery took place within 1000 feet of a school.

After a thorough review of the record, we agree with White's contention. The State introduced into evidence a map depicting the distance between the residence and Eastgate Middle School as 896 feet. The map depicts the residence and displays the address. On the side, it reflects that black areas are schools and gray areas are school buildings. Arrows point to the two schools reflected on the map. The map has a distance scale, and a line is projected from the edge of the residence to the edge of the school. However, there is nothing on the map to indicate that anything depicted thereon is drawn to scale, and there was no testimony to even suggest that fact. Moreover, Detective Buente testified that the computer program calculated the distance, not him. And, the map does not indicate the topography of the area, the visibility from the residence to the school, or a complete picture of the access to the residence from roads or streets that do or do not pass by the school.

The only other evidence the State presented on this issue was the testimony of Detectives Browning and Buente that the residence was within 2000 feet of the school but this was based solely on their observation of the map. There was no evidence regarding the size and height of the school building(s), how many blocks away the school is from the residence, and whether the school is visible from the residence. The State failed to show that White had ever seen the school, had ever traveled past the school, or had heard about the school's location. From the record, there is nothing from which the jury could reasonably infer whether the school was a highly visible large complex, or a single classroom in the basement of a residential building.

The map and the related testimony are simply insufficient to establish that White knew about the school. The State needed to present some additional evidence to establish that White was knowingly distributing or delivering a controlled substance within 2000 feet of a school. Evidence that the school premises was a large complex, with one or more large and highly visible buildings, and that normal ingress and egress from the residence would have taken White by the school, would have permitted an inference that he had knowledge of the location and distance of the school. There was no such evidence. Testimony that the buildings depicted on the map were drawn to scale, and describing the appearance of the buildings, could have given the jury a basis for forming a reasonable inference that White had knowledge of the location of the school. There was no such testimony. The map, which was in essence the only evidence the State presented on this issue, in and of itself, was insufficient to establish that White *knowingly* distributed a controlled substance within 2000 feet of a school. For the jury to conclude, as was necessary for it to convict, that the sale occurred within 2000 feet of a school would have required it to engage in mere speculation. Accordingly, we must hold that the evidence was insufficient to support White's conviction on those charges.

In cases where convictions for greater offenses are overturned, the rule set out in *State v. O'Brien,* 857 S.W.2d 212 (Mo. banc 1993), applies:

> Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

*Id.* at 220; *Crump,* 986 S.W.2d at 187. In *Crump,* 986 S.W.2d 180, the Eastern District of this Court explained:

> We have observed previously the special nature of section 195.214. In *State v. Wheeler,* 845 S.W.2d 678, 680 (Mo.App. E.D.1993), we noted that section 195.214 is not a strict liability statute and does not criminalize an otherwise innocent

activity. It expressly incorporates section 195.211, which defines the offense of distribution of a controlled substance, attempting to distribute a controlled substance, or possession of a controlled substance with intent to distribute. A defendant must have violated section 195.211 before consideration can be given to section 195.214. Thus, section 195.214 operates as a "penalty enhancement" provision. *Id.* at 680–81. As our Supreme Court has stated, such a provision does not create a separate crime. *State v. Hatton,* 918 S.W.2d 790, 794 (Mo. banc 1996).

*Id.* at 185–86.

As noted, § 195.214 is not a separate crime but merely provides for penalty enhancement. Thus, it is not a "greater offense," of which violation of the provisions of § 195.211 is a "lesser offense." However, the jury had to find all elements of delivery of a controlled substance under § 195.211 prior to finding White guilty of delivering a controlled substance within 2000 feet of a school under § 195.214. Accordingly, the rationale expressed in *O'Brien* for permitting the reviewing court to enter a conviction for a lesser offense when it reverses a conviction of a greater offense because of insufficient evidence is just as applicable to the instant circumstances. *Crump,* 986 S.W.2d at 187. Therefore, this Court may enter convictions for the offense of delivery of a controlled substance under § 195.211 provided the State presented sufficient evidence. As discussed, *infra* in Point II, we find the State presented sufficient evidence to establish that White possessed controlled substances with an intent to deliver them.[3]

■ In his second point on appeal, White claims the trial court erred in overruling his motion for judgment of acquittal because the State failed to present sufficient evidence to establish beyond a reasonable doubt that he actually or construc-

tively possessed more than five grams of marijuana. Section 195.211.1 provides that "...it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance...." Section 195.010(32) defines the terms "possessed" or "possessing a controlled substance" as "a person with the knowledge of the presence and illegal nature of a substance, has actual or constructive possession of the substance."

■ The State must meet a two-prong test to sustain a conviction for possession of a controlled substance; the State must prove (1) a conscious and intentional possession of the controlled substance, either actual or constructive, and (2) an awareness of the presence and nature of the substance. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992); *Yahne,* 943 S.W.2d at 745. Both the possession and the awareness prongs may be proved by circumstantial evidence. *Purlee,* 839 S.W.2d at 587; *Yahne,* 943 S.W.2d at 745.

■ Actual possession requires that a person "has the substance on his person or within easy reach and convenient control." *§ 195.010(32).* In the absence of actual possession, a person may be in constructive possession when "other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Purlee,* 839 S.W.2d at 588. To prove constructive possession, the State must show, at a minimum, that the defendant possessed access to and control over the premises where the substance was found. *Id.*

White contends the State failed to present sufficient evidence that he actually or constructively possessed the marijuana. White states that no evidence established that he owned or lived at the residence. He also notes that no drugs or money were found on him when he was arrested.

---

3. In his first point, White challenges the sufficiency of the evidence to establish that he knowingly delivered controlled substances

within 2000 feet of a school. He made no other challenge to the sufficiency of the evidence in this point.

He claims that the evening of the search warrant was the first time he went to the residence at 4141 North Winn and that Detective Browning mistakenly identified him as the man who sold him drugs.

We find there was sufficient evidence from which a reasonable juror could convict White for the possession of a controlled substance with an intent to deliver. Although White did not own the residence, he had been frequenting the residence for several months prior to the drug sales to Detective Browning. Detective Browning testified that on September 29, 1998, he went to the residence at 4141 North Winn and White asked him if he was there to get some "bud," meaning marijuana. White asked the detective what he wanted, and Detective Browning informed White that he wanted "20," meaning $20 worth of marijuana. White asked Browning to come inside, and the two men went into the kitchen. White opened a kitchen drawer and removed a bread sack with two bags inside, each containing 15 to 20 smaller, individually wrapped bags of marijuana. White took out two of these small bags and handed them to Detective Browning in exchange for $20.

White's sale of marijuana to Detective Browning on September 29, 1998, permits a reasonable inference that he constructively possessed the marijuana found in a kitchen drawer during the execution of the search warrant on October 1, 1998. The police found a bag of marijuana in the kitchen drawer during their search. When White sold the marijuana to Detective Browning on September 29, he got the marijuana out of a bag located in the kitchen drawer. Reasonable jurors could infer that White knew about the marijuana because he knew its location and exercised control over it just two days before the execution of the search warrant. In addition, White was again at the residence selling drugs on September 30, 1998, and October 1, 1998. The State met its burden to present evidence showing that White knew of the presence of the marijuana and

exercised control over it. *See Purlee,* 839 S.W.2d at 587. Point II denied.

We affirm the judgment against White on Count IV, possession of a controlled substance with an intent to deliver. In light of our disposition of point one, we reverse defendant's three convictions of distribution of a controlled substance within 2000 feet of a school pursuant to § 195.214, a class A felony, enter convictions of possession of a controlled substance with intent to distribute pursuant to § 195.211, a class B felony, and remand for resentencing on these convictions.

Judgment affirmed in part, reversed in part, new judgment entered, and remanded for resentencing.

All concur.