**STATE of Missouri, Plaintiff–Respondent,**

v.

**Frank D. CROOKS, Jr., Defendant–Appellant.**

**No. 24113.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 23, 2002.

Amy M. Bartholow, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Frank D. Crooks, Jr., ("Appellant") was charged with two counts of selling a controlled substance near a school, a violation of § 195.214, RSMo 2000.[1] The jury convicted him of one count and acquitted him of the second count. Appellant challenges the sufficiency of the evidence that he knew his residence was within 2,000 feet of school property and that he sold methamphetamine ("meth"). He also challenges the admission of evidence of Appellant's prior drug sales. We affirm.[2]

Officer Frank Lundien ("Lundien") of the Joplin Police Department was the only witness to testify about drug purchases from Appellant. Lundien testified that he first met Appellant on November 24, 1999, when he went to Appellant's home to purchase drugs. Lundien stated he was there to pay Appellant $150 owed by another person (Lundien's confidential informant) for a previous drug deal. Appellant told Lundien that he did not recall the person owing him money for anything but Lundien insisted, so Appellant told him he could leave the money. Lundien then asked Appellant if he could "help him out," meaning purchase meth from him. Appellant asked Lundien how much he wanted to buy and Lundien said an eight-ball,

---

**1.** Section 195.214 reads:

A person commits the offense of distribution of a controlled substance near schools if such person violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person in or on, or within two thousand feet of, the real property comprising a public or private elementary or secondary school[.]

**2.** Appellant filed a Motion to Reduce Appeal Bond. That motion is denied.

which is an eighth of an ounce of meth. Appellant sold one gram of meth to Lundien for $100. Lundien left and deposited the drugs into the evidence locker at the Joplin Police Department later that day; however, he left blank the space on the property record form that asked for the name of the person from whom the evidence was taken. Lundien said he did not put Appellant's name on the sheet because he was worried about internet security.

Appellant specifically recalled his whereabouts on November 24, 1999. He testified he was at his ex-wife's house and a friend's home all day for an early Thanksgiving and did not come home until late that evening. He also recalled that he called the police to his home that night for a neighborhood dispute. The parties stipulated that the police had in fact responded to Appellant's home that night. Appellant denied selling Lundien any drugs that day. The jury acquitted the Appellant of the November 24th drug charge.

The second charge was for a drug purchase on December 11, 1999. Lundien testified he and a confidential informant went to Appellant's residence to purchase meth. When they arrived at Appellant's home, the informant yelled Appellant's name and the Appellant responded. After going inside the home, Lundien told Appellant he needed to make some money, but Appellant responded that "he didn't have much" and "what he did have he barely broke even with." Appellant then showed Lundien some white powder in a bag. He told Lundien he could have the bag after Appellant took a "bump" off it, meaning a small portion of the contents for his personal use. Appellant took the bag, turned his back toward Lundien, and "messed around in" some drawers of a computer desk he was near. He then turned around and gave Lundien the bag with less powder in it. Lundien paid Appellant twenty-five dollars for the bag. Appellant told Lundien that it was "good stuff" and that he could add some "cut" to it, which means Lundien could add Vitamin B–12 to dilute the powder so that he had more to sell.

Appellant testified that he had no specific recollection of December 11, 1999. Nonetheless, he denied selling any drugs to Lundien that day. Appellant testified that Lundien asked him about selling drugs on several occasions and that Appellant always told him he did not know what he was talking about and he did not have anything. The jury convicted Appellant of a drug sale on that date.

The case was submitted to the jury at 5:15 p.m. At 6:38 p.m. the jury sent a note to the court that read, "We cannot reach a [unanimous] decision and probably will not[.] What do we do?" At 7:08 p.m. the court sent three standard inquiries to determine whether the jury was deadlocked on guilt or punishment. Seven minutes later, without answering the inquiries, the jury returned their verdicts.

In Point One, Appellant contends that there was insufficient evidence that Appellant knew his residence was within 2,000 feet of school property. In examining the sufficiency of the evidence, we are limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact might have found Appellant guilty beyond a reasonable double. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). In making that determination this court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *Id.* To make its case the state must prove that 1) Appellant sold a controlled substance; 2) the sale was within 2,000 feet of a school; and 3) Appellant did so knowingly with regard to all of the facts and circumstances. MAI–CR 3d 325.30. In this point Appellant disputes the evidence concerning his

knowledge that there was a school within 2,000 feet of his home.

Appellant cites to *State v. White*, 28 S.W.3d 391, 397 (Mo.App. W.D.2000) as being factually similar. In *White*, the sole testimony concerning the distance between the distributing point and the school was the admission of a computer-generated map showing the school to be within the prescribed distance. Although the defendant did not challenge the actual computed distance between the residence and the school, he challenged the evidence to establish that he knowingly delivered the controlled substances within 2,000 feet of a school. In reversing the conviction, the Western District stated:

> There was no evidence regarding the size and height of the school building(s), how many blocks away the school is from the residence, and whether the school is visible from the residence. The State failed to show that White had ever seen the school, had ever traveled past the school, or had heard about the school's location. From the record, there is nothing from which the jury could reasonably infer whether the school was a highly visible large complex, or a single classroom in the basement of a residential building.
>
> ... Evidence that the school premises was a large complex, with one or more large and highly visible buildings, and that normal ingress and egress from the residence would have taken White by the school, would have permitted an inference that he had knowledge of the location and distance of the school.

The evidence supporting the conviction was that Appellant testified he knew the school might be no more than five or six blocks from his house. He testified he lived down the street from the school, that he knew the school was there but did not know the parking lot was there. Lundien testified the high school encompassed the entire block. He measured the distance from the high school and Appellant's house using a roller tape from the police department. The total direct distance was 818 feet; the distance by road between the house and the school was 1,042 feet. Lundien further testified that he went by the school on each of the two occasions that he went to Appellant's house to buy drugs and saw children from the school walking by Appellant's house around lunch time. We find sufficient evidence for the jury to infer that Appellant had knowledge that the sale was within 2,000 feet of a school. Point One is denied.

■ For his second point Appellant claims the trial court erred in accepting the jury verdict because insufficient evidence existed that Appellant sold meth. The only evidence supporting either sale came from Lundien. Therefore, Appellant argues because the jury acquitted Appellant of the November 24th charge, it must have rejected Lundien's testimony concerning the November 24th sale. This rejection, Appellant argues, indicates that the jury found Lundien to be untruthful. Appellant posits that this requires all of Lundien's testimony to be unreliable, thereby leaving insufficient evidence on which to convict him of the December 11th incident.

■ To find insufficient evidence of the sale of meth, we would have to find that Lundien's testimony was not credible. This is contrary to our rules of review that accept as true all of the evidence favorable to the state. We reject Appellant's argument that the jury necessarily found Lundien to be untruthful. Appellant may have been able to cast doubt on the November 24th sale without tainting Lundien's testimony relating to December 11th. "[I]t is within the jury's province to believe all, some, or none of any witness's testimony in arriving at a verdict." *State v. Vaughn*, 32 S.W.3d 798, 799 (Mo.App. S.D.2000).

■ Appellant contends, because of the prompt verdicts after the jury's declaration of being unable to reach a unanimous verdict, the verdicts were the result of an illegal compromise. Appellant provides no basis to support this contention other than the note sent from the jury and the subsequent split decision. Point II is a poorly veiled attempt to impeach the jury verdict rendered on the count for which Appellant was found guilty. It attempts to challenge the mental process by which the jury arrived at its verdict. As *Baumle v. Smith*, 420 S.W.2d 341 (Mo.1967), explains, challenges to verdicts on the basis of the mental process of jurors is not permitted for at least two reasons. First, if such challenges were permitted, there would be no end to litigation. Second, proof of a juror's mental process is " 'locked in the breast of the juror, and is not capable of refutation or corroboration.' " *Id.* at 348, quoting *Southern Pac. Co. v. Klinge*, 65 F.2d 85, 88 (10th Cir.1933).

We further note that Appellant relies on *State v. McNail*, 767 S.W.2d 84 (Mo.App. E.D.1989), in support of Point II. The extreme facts that caused the court in *McNail* to conclude the trial judge had coerced the jury to render its verdict do not exist in this case. We see no error. Point II is denied.

■ Finally, Appellant contends that the trial court err ·d in ᵃ ʷing "evidence of Appellant's prie r̠ ales." The allegedly erroneous evidence was testimony by Lundien that he had brought a confidential informant to Appellant's residence to purchase controlled substances on four different occasions. The testimony came in without objection, therefore, we can only review for plain error. *State v. Ballard*, 6 S.W.3d 210, 213–14 (Mo.App. S.D.1999).

■ Plain error review is used sparingly and its application is limited to those cases where there is a strong, clear demonstration of manifest injustice or a miscarriage of justice. *State v. Varvera*, 897 S.W.2d 198, 201 (Mo.App. S.D.1995). It is true that, generally, evidence of uncharged crimes, wrongs, or acts committed by the accused is inadmissible to show defendant's propensity to commit such crimes. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). For the evidence to be considered inadmissible under this general rule, the evidence must definitely associate the accused with another crime. *State v. Rush*, 949 S.W.2d 251, 255 (Mo. App. S.D.1997). Where the testimony is indefinite as to a defendant's association with the other crime, no reversible error occurs. *State v. Bolds*, 11 S.W.3d 633, 638 (Mo.App. E.D.1999).

Here Lundien specifically testified he had never purchased drugs from Appellant prior to November 24th. His pretext for going to Appellant's home on November 24th was to pay for a drug purchase by someone else. Lundien testified that Appellant stated nobody owed him any money for anything and only kept the money upon Lundien's insistence. Appellant acknowledged that other people who were often present at the residence used drugs and had previously sold controlled substances.

We see no plain error in allowing Lundien's testimony that he had been to Appellant's home on prior occasions with confidential informants. Lundien did not testify to any dealings with Appellant nor implicate Appellant in any prior criminal activity. Point III is denied.

The judgment is affirmed.

GARRISON, P.J., and PARRISH, J., concur.