**STATE of Missouri, Respondent,**

v.

**Raymond WHITE, Appellant.**

**No. WD 59312.**

Missouri Court of Appeals,
Western District.

March 19, 2002.

Jeannie M. Willibey, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anne E. Edgington, Assistant Attorney General, Jefferson City, for Respondent.

Before HOWARD, P.J., TURNAGE, Sr.J., and HANNA, Sr.J.

VICTOR C. HOWARD, Presiding Judge.

Raymond White appeals from the trial court's judgment resentencing him, pursuant to this court's mandate, on his conviction of one count of possession of a controlled substance with intent to distribute.[1] In his sole point on appeal, White claims that this court, after reversing Count I of the class A felony of delivery of marijuana within two thousand feet of a school, mistakenly entered a conviction for the class B felony of delivery of a controlled substance, and the resentencing court thereafter erred in sentencing him for the class B felony of delivery of a controlled substance because there was no evidence that the weight of the marijuana was more than five grams.

We recall our mandate, vacate the trial court's judgment in part, enter a new judgment, and remand for resentencing.

**Facts**

Raymond White was charged by information in the Circuit Court of Clay County with three counts of delivery of a controlled substance within two thousand feet of a school, § 195.214 RSMo,[2] and one count of possession of more than five grams of marijuana with intent to distribute, § 195.211. Count I charged White with delivering more than five grams of marijuana to a police officer within two thousand feet of a school on September 29, 1998. Count II charged White with delivering cocaine to a police officer within two thousand feet of a school on September 30, 1998. Count III charged White with delivering cocaine to a police officer within two thousand feet of a school on October 1, 1998. Count IV charged White with possession of more than five grams of marijuana with intent to distribute on October 1, 1998. Following a jury trial, White was found guilty of all counts and sentenced as a prior and persistent offender to concurrent terms of thirty years' imprisonment on each count.

White appealed his convictions to this court in *State v. White*, 28 S.W.3d 391 (Mo.App. W.D.2000). The evidence adduced at trial, as summarized by this court, was as follows:

On the evening of September 29, 1998, Detective Robert Browning, an undercover officer with the Kansas City Missouri Police Department Street Narcotics Unit, went to a residence at 4141 North Winn in Kansas City, Missouri, attempting to purchase narcotics from Ishman Tice. Detective Browning knocked on the back door, and White opened the door and asked him if he was "trying to get some bud," meaning marijuana. Detective Browning told White yes, and White told him to go around to the front door. Browning went to the front door, and White invited him inside. He asked Browning what he wanted, and Browning said "20," meaning $20 worth of marijuana.

---

**1.** In his brief, White refers to his conviction of delivery of a controlled substance on Count I. However, the record indicates that while White was charged with delivery of a controlled substance, this court entered a conviction of possession of a controlled substance with intent to deliver on Count I. The trial court followed this court's mandate and sentenced White on the conviction of possession of a controlled substance with intent to distribute.

**2.** All statutory references are to RSMo Cum. Supp. 1999.

The men went into the kitchen, and White removed a bread sack from a kitchen drawer. Inside the bread sack, two other sacks each contained fifteen to twenty individually wrapped marijuana bags. White handed Browning two of the bags in exchange for a $20 bill. Browning then asked White if he ever got any "hard," referring to crack cocaine. White said yes, and he told Browning that he sells it a gram at a time for $50. White told him that if he wanted to purchase any to "just come through" because "[w]e're here all the time." Detective Browning then left the residence. Field and laboratory tests confirmed the presence of marijuana in the substance Browning purchased from White.

The following evening, September 30, 1998, Detective Browning returned to the residence at 4141 North Winn. He approached the residence as two women were leaving. As he told the women that he was there to see "Ish," White came to the door and told him to come in. Browning walked into the living room and some men in the room shut the front door and locked it. White began patting him down. Browning pushed him back and asked him what he was doing. White responded that he was making sure that he was not a police officer. Detective Browning thought White may throw a punch at him, but White just pushed his chest against Browning's shoulder. Browning told him that he was just there to get his $50 worth of crack. White said okay, and he went into the kitchen. A blanket now separated the kitchen from the living room, and White and three other men would not let Browning into the kitchen. White returned from the kitchen and handed Browning a chunk of crack. Browning set $50 on a chair next to White and left. The substance tested positive for cocaine.

The next evening, October 1, 1998, Detective Browning returned once again to the residence to make his third and final drug buy from White. Browning knocked on the door, and a man answered the door and asked whom Browning was there to see. He answered that he wanted to see "Ish," and the man let him come inside. Browning met White inside and told him that he was there to get another "50 hard," meaning crack cocaine. White said okay, and Browning then asked him how much White would charge him for an "8-ball," an ⅛ ounce of crack cocaine. White asked the other man what he thought, and he answered about $150. White went into the kitchen, then came back and handed Browning the crack in exchange for $50. Laboratory tests later confirmed the substance White gave Browning contained cocaine. The men started talking about the 8-ball again and asked Browning if he could get guns in exchange for crack. Browning told them that he could get them guns.

After he left the residence, Detective Browning radioed the Street Narcotics Tactical Team, which waited in a van about a block away, to notify them that it was a "good deal." The police had previously obtained a search warrant and proceeded to execute it. The Tactical Team surrounded the residence and then entered it pursuant to the warrant. No one was seen leaving the residence during this process. White, Anthony Stanley, and Shana Sutgrey were inside the house, and the police took the three of them into custody. The police brought all three outside for a lineup, and Detective Browning identified White as the man who had sold him the drugs at each of the drug buys. Pursuant to a search of the residence, the police found 97.42

grams of marijuana in the kitchen drawer. The search also revealed money and a bag of a white powdered substance in the toilet.

At trial, Detective Reed Buente, a member of the Gang Squad of the Kansas City, Missouri Police Department, testified that he used computer mapping software to make a map of the area surrounding the residence at 4141 North Winn. The map shows the relationship of the house at 4141 North Winn to two schools in the neighborhood. Specifically, the map indicates that Eastgate Middle School is 896 feet away from the residence, and Winwood Elementary is 1920 feet away.

Detective Browning testified that the residence at 4141 North Winn is within 2000 feet of a school and that he knew the residence was this close to a school because of the department's mapping system. He testified that the computer mapping system allows a user to input any Kansas City address and receive a map of any schools in the area and the exact distance from the schools to the input address.

At the close of the State's evidence, White moved for a judgment of acquittal, arguing that the State failed to prove that White knew he was within 2000 feet of a school. The court overruled his motion.

White relied on a theory of misidentification at trial. White called Anthony Stanley as a defense witness. Stanley, who was in the residence when the search warrant was executed, testified that he saw Ishman Tice run past him and jump out a window when the police entered the residence to conduct the search. White testified in his own defense, claiming that Ishman Tice, not White, sold the detective the drugs on each of the three occasions. He also testified that Tice fled out the window when the police arrived. White claimed that he had not been to the residence at 4141 North Winn prior to October 1, 1998. White said he had known Tice for approximately one year.

In rebuttal, the State called Detective Fred Phillips of the Kansas City, Missouri Police Department. He testified that he did not see or hear anyone escape from the residence while the search warrant was being executed and that he did not see any broken or open windows. He also testified that White told him that he had known Tice for two years and that he had been frequenting the residence at 4141 North Winn for the past several months.

At the close of all evidence, White moved again for a judgment of acquittal, arguing the State failed to prove that he had knowledge of a school within 2000 feet of the residence. The court denied his motion.

The jury found White guilty of all four counts, and the court sentenced White as a prior and persistent offender to concurrent sentences of thirty years imprisonment on each count. White timely appealed.

*White*, 28 S.W.3d at 394–95.

White raised two points on appeal. First, he claimed the trial court erred in overruling his motion for judgment of acquittal because the State failed to introduce sufficient evidence to prove beyond a reasonable doubt that he knowingly delivered controlled substances within two thousand feet of a school. *Id.* at 395. Specifically, he claimed the State failed to prove that he knew that the residence at 4141 North Winn was located within two thousand feet of a school. *Id.* at 395–96. Second, White claimed the trial court erred in overruling his motion for judgment of acquittal because the State failed

to present sufficient evidence to prove that he actually or constructively possessed more than five grams of marijuana. *Id.* at 398. White specifically argued that there was insufficient evidence to show that he actually or constructively possessed the marijuana. *Id.* From what we can discern from the record, White did not argue that there was insufficient evidence that the marijuana involved weighed more than five grams.

This court affirmed White's conviction on Count IV (possession of more than five grams of marijuana with intent to deliver on October 1, 1998), reversed on Counts I, II and III (the class A felonies of delivery of a controlled substance within two thousand feet of a school), and entered convictions for three class B felonies, pursuant to § 195.211. *Id.* at 399. This court remanded Counts I, II and III for resentencing. *Id.* White filed a timely motion for rehearing or, in the alternative, application for transfer. This court overruled that motion. Thereafter, White filed a timely application for transfer to the Missouri Supreme Court. In his application for transfer, White argued that this court erred in entering a conviction of a class B felony as to Count I because our finding that the jury had to find all elements of delivery of a controlled substance under § 195.211 prior to finding him guilty of delivering a controlled substance within two thousand feet of a school under § 195.214 was erroneous. Specifically, White argued that a conviction of the class B felony of delivery of a controlled substance under § 195.211 would have required a finding that he delivered more than five grams of marijuana, and the verdict director on Count I did not require the jury to make such a finding.

During the resentencing hearing on remand, White reiterated the argument made in his motion for transfer, arguing that this court erred in entering a conviction for a class B felony on Count I because the jury was never required to determine the amount of marijuana or whether to enter a conviction for a class B or class C felony. The trial court stated that it had no discretion to depart from this court's mandate that it sentence White on the class B felony. The trial court sentenced White to concurrent terms of twenty years' imprisonment on Counts I, II and III for the class B felony of delivery of a controlled substance. This appeal follows.

## Argument

■ White's sole point on appeal is that this court, after reversing Count I [3] of the class A felony of delivery of marijuana within two thousand feet of a school, mistakenly entered a conviction for the class B felony of delivery of a controlled substance, and the resentencing court thereafter erred in sentencing him for the class B felony of delivery of a controlled substance, because the jury never determined that the weight of the marijuana delivered was more than five grams. White argues that pursuant to § 195.211, the delivery of marijuana is a class C felony unless the weight of the marijuana is more than five grams. As such, the jury's determination supports, at most, a conviction and sentence for the class C felony of delivery of a controlled substance.

■ "The doctrine of the law of the case governs successive appeals involving substantially the same issues and facts." *Bandy v. State,* 847 S.W.2d 93, 94 (Mo.

---

**3.** White does not claim error as to his convictions of class B felonies under § 195.211 on Counts II and III. Our mandate in *State v.* *White* as to those convictions and the trial court's sentencing of White on those convictions remain unaffected by this appeal.

App. W.D.1992). Pursuant to this doctrine, prior decisions of the appellate court become the law of the case in any subsequent proceedings of the same cause. *Id.* Thus, when an issue is decided on appeal and the case is remanded to the trial court for further proceedings, the trial court does not have the jurisdiction to overrule the appellate court. *Hankins v. Hankins,* 864 S.W.2d 351, 353 (Mo.App. W.D.1993). The trial court is bound to render judgment in conformity with the appellate court's mandate and is without power to modify, alter, amend, or otherwise depart from the appellate judgment. *Id.*

■■■ "Generally, successive direct appeals in criminal cases are not authorized. However, where ... a case on direct appeal is remanded for resentencing, a defendant is entitled to have the new judgment reviewed to determine whether the judgment entered by the trial court is in conformity with [the appellate court's] mandate." *State v. Olney,* 987 S.W.2d 466, 468 (Mo.App. W.D.1999) (citations omitted). This limitation as to the scope of review on appeal in a criminal case, after remand for resentencing only, is in keeping with the operation of the doctrine of the law of the case, which normally precludes re-examination of issues decided in the original appeal. *Bandy,* 847 S.W.2d at 94. However, the doctrine is "a rule of policy and convenience, a concept that involves discretion. Thus, an appellate court has discretion to refuse to apply the doctrine where the first opinion arose from mistake or resulted in manifest injustice, or where a change in the law intervened between the appeals." *Id.* at 94–95. (Citations omitted.)

> If circumstances arise that cast doubt on the correctness of the law of the case as established on appeal, our procedures enable a litigant to press the *appellate court* to depart from the mandate and opinion by motion for rehearing, motion to recall mandate, or by appeal from the judgment entered after remand.

*Davis v. J.C. Nichols Co.,* 761 S.W.2d 735, 740–41 (Mo.App. W.D.1988). "An appellate court is a court for the correction of errors—its own as well as others. In correcting the errors of lower courts we do not ... proceed on the theory we make none of our own...." *Student Loan Mktg. Ass'n v. Raja,* 914 S.W.2d 825, 830 (Mo. App. W.D.1996), quoting *Laclede Inv. Corp. v. Kaiser,* 596 S.W.2d 36, 41 (Mo. App. E.D.1980). Thus, if we find in the second appeal that our prior mandate was incorrect, we are free to and should correct it.

Section 195.211 provides as follows:

1. Except as authorized by sections 195.005 to 195.425 and except as provided in section 195.222, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.

2. Any person who violates or attempts to violate this section with respect to any controlled substance except five grams or less of marijuana is guilty of a class B felony.

3. Any person who violates this section with respect to distributing or delivering not more than five grams of marijuana is guilty of a class C felony.

Section 195.214 provides as follows:

1. A person commits the offense of distribution of a controlled substance near schools if such person violates section 195.211 by unlawfully distributing or delivering any controlled substance to a person in or on, or within two thousand feet of, the real property comprising a public or private elementary or

secondary school, public vocational school, or a public or private junior college, college or university or on any school bus.

2. Distribution of a controlled substance near schools is a class A felony.

We first address the issue of whether the doctrine of the law of the case precludes our review of this appeal. The weight of the marijuana White delivered on September 29, 1998 was not an issue at trial or in the original appeal, as the charge and conviction on Count I were pursuant to § 195.214, which does not contain a weight requirement for the controlled substance. White raised his claim pertaining to the lack of evidence of the weight of the marijuana on Count I in his post-appellate motion, the first available opportunity after the issue arose. However, while the law of the case doctrine would seem to limit us to a review of whether the trial court followed our mandate in re-sentencing White, we have the discretion to correct any mistake we may have made in our original mandate. We choose to exercise that discretion here.

 White correctly asserts that we erred in entering a conviction on the class B felony of possession of a controlled substance with intent to deliver on Count I in *State v. White*, 28 S.W.3d 391 (Mo.App. W.D.2000). Section 195.211.2 provides that in order to be convicted of the class B felony of delivery of a controlled substance, the defendant must have delivered more than five grams of marijuana.[4] If the amount of marijuana delivered is five grams or less, he may only be convicted of a class C felony under § 195.211.3. There was no evidence before the trial court indicating the weight of the marijuana White

delivered on September 29, 1998. Therefore, White could only be convicted of a class C felony on Count I.

We recall our mandate in *State v. White*, 28 S.W.3d 391 (Mo.App. W.D.2000), as to the conviction of a class B felony of possession of a controlled substance with intent to deliver on Count I, vacate the trial court's judgment sentencing White on that conviction, enter a conviction of the class C felony of delivery of a controlled substance, and remand for sentencing on that conviction.

TURNAGE, Sr.J., and HANNA, Sr.J., concur.

---

4. Although in our original mandate we entered a conviction of possession with intent to deliver, rather than delivery of, a controlled substance, under both of these charges the State must prove that more than five grams of marijuana was possessed or delivered, respectively, in order to obtain a conviction of a class B felony.