JEFFREY W. BATES, J.
Kalen Hall (Defendant) was convicted after a jury trial of the class A felony of assault in the first degree. See § 565.050.[2] Presenting one point on appeal, Defendant contends the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because the State failed to prove that Defendant caused "serious physical injury" to J.L. (Victim). Finding no merit to this contention, we affirm the trial court's judgment.
Factual and Procedural Background
We consider the evidence and all reasonable inferences derived therefrom in a light most favorable to the verdict, and reject all contrary evidence and inferences. State v. Lee , 528 S.W.3d 59, 62 (Mo. App. 2017). Viewed from that perspective, the following evidence was adduced at trial.
Defendant and Victim were in a relationship for about five years. On the evening of May 30, 2016, Defendant and Victim were drinking heavily during a party at a friend's house. Defendant propositioned Victim to take part in a threesome with himself and another woman. When Victim refused, Defendant became violent and tried to force Victim into his truck. Victim decided to walk down the street to allow Defendant to "cool down." As Victim was walking away from the party, she heard squealing tires. Victim fled, "running for [her] life." Defendant followed in his truck, driving "really fast[,]" and swerved the truck towards Victim. Victim testified that she thought, "he's gonna run me over and he's gonna kill me."
After skidding to an abrupt stop, Defendant exited the truck and began beating Victim. Defendant struck Victim on the back of the head, rendering her unconscious. Defendant then grabbed Victim by one arm, dragged her along the ground for 10-20 feet, and threw her entire body into a roadside ditch. The ditch contained a pool of water, 6-12 inches deep. Victim *452 landed face down in the ditch, with water completely covering her face. Defendant straddled Victim and held her head under the water. Defendant continued to hold Victim down in the water until a neighborhood resident ran toward the ditch and intervened. After witnesses pulled Victim out of the ditch, Defendant repeatedly stated, "I'm a beast" and "this is my bitch." Defendant was arrested and taken into custody.
Victim soon regained consciousness, but she was coughing and had difficulty breathing. After the incident, Victim felt "sore everywhere" and experienced burning pain in the back of her head. An EMT dispatched to the scene reported that Victim presented with trouble walking, "traumatic injury and pain." Victim was taken to a hospital, but would not consent to a physical examination because she was afraid of being near any men, including the only available doctors. An investigating officer testified that Victim was "clearly" limping the following day. Victim further testified that she began to suffer from consistent migraines after the incident. The migraines were still recurring at the time of trial.
Defendant was charged as a prior and persistent offender with the class A felony of assault in the first degree. See § 565.050. The amended information charged that Defendant "attempted to kill [Victim] by punching her, rendering her unconscious, then dragging her, unconscious body, to a pool of water and holding her face down in the water in an attempt to drown her, thereby causing serious physical injury." A one-day jury trial was held in March 2017. Defendant did not testify. Defendant moved for judgment of acquittal at the close of the State's evidence and again at the close of all the evidence. The trial court denied both motions. The jury found Defendant guilty as charged.
Defendant subsequently filed a motion for a new trial, which was denied. At the hearing on that motion, the court explained why it rejected Defendant's argument that the State did not present sufficient evidence to establish serious physical injury. The court reasoned:
The evidence was that the Defendant struck the victim and knocked her unconscious and then drug her by the arm over to a ditch filled with water. My thinking in allowing this to go to the jury on serious physical injury was that any time you inflict a head injury sufficient to cause trauma to the brain to render the person unconscious, that puts them in significant danger for death. ... [T]he evidence was he caused a trauma - caused head trauma sufficient to render her unconscious. My thinking is, under those circumstances, the person's in danger of death, and that's why I let that element go to the jury.
Thereafter, the court sentenced Defendant to a term of 25 years in the Department of Corrections. This appeal followed. Additional facts will be included below as we address Defendant's point of error.
Discussion and Decision
Defendant's sole point on appeal contends that the trial court erred in overruling his motion for acquittal at the close of all of the evidence because the State did not present sufficient evidence to establish that Victim suffered "serious physical injury" as defined under the statute.
"We ordinarily review a trial court's ruling on a motion for judgment of acquittal in a jury-tried case to determine whether the State made a submissible case." State v. Bumbery , 492 S.W.3d 656, 661 (Mo. App. 2016). Under that standard of review, the issue is whether the State *453 presented sufficient evidence from which a reasonable juror could have found Defendant guilty of the crime beyond a reasonable doubt. State v. Bateman , 318 S.W.3d 681, 686-87 (Mo. banc 2010). This is not an assessment of whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather a question of whether, in light of the evidence most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id . at 687 ; State v. Nash , 339 S.W.3d 500, 509 (Mo. banc 2011).
Defendant was found guilty of assault in the first degree. See § 565.050. A person commits this crime "if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1. Assault in the first degree rises to the level of a class A felony if it results in serious physical injury to the victim. § 565.050.2. "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" § 565.002(6).
While Defendant concedes that the evidence presented at trial was sufficient to maintain a conviction of assault in the first degree as a class B felony, he claims that the evidence was insufficient to reach the level of a class A felony. Defendant challenges only the element of serious physical injury, arguing that the State failed to present sufficient evidence that Defendant either created a "substantial risk of death" or caused a "protracted loss or impairment" to Victim. We disagree.
Substantial risk of death "suggests circumstances which give rise to apprehension of life threatening consequences." State v. Kruger , 926 S.W.2d 486, 488 (Mo. App. 1996) ; see also State v. Hughes , 469 S.W.3d 894, 900 (Mo. App. 2015). The question is whether the injuries inflicted in the assault, viewed objectively, raise a legitimate concern either that the victim could die or suffer more than a momentary loss of bodily function. Hughes , 469 S.W.3d at 900 ; State v. Kee , 956 S.W.2d 298, 301 (Mo. App. 1997).
The record contains sufficient evidence from which a jury could have reasonably found that Defendant created a substantial risk of death to Victim, thereby satisfying the element that Defendant caused serious physical injury. First, Defendant struck Victim so forcefully on the back of the head that she lost consciousness. Defendant argues that "[t]here is not a legitimate concern that when someone is rendered unconscious by a punch they will die." However, "Missouri courts have recognized that beating with fists can cause death or serious physical injury within the parameters of the first degree assault statute." State v. Lauer , 955 S.W.2d 23, 25 (Mo. App. 1997). Loss of consciousness has also repeatedly been found to contribute to a finding of serious physical injury. See, e.g. , State v. Crudup , 415 S.W.3d 170, 174 (Mo. App. 2013) ("choking someone into unconsciousness inherently creates a substantial risk of death"); State v. Methfessel , 718 S.W.2d 534, 537 (Mo. App. 1986) (loss of consciousness and memory attendant to a brain concussion constitutes serious physical injury). More significantly, Defendant continued to inflict injuries to Victim after she was rendered unconscious by Defendant's beating.
Defendant immediately dragged Victim into a nearby ditch and held her head underwater. Multiple witnesses testified that Victim's face was fully submerged, her struggle to breathe resulted in gurgling noises, and Defendant did not stop attempting to drown Victim until a neighbor *454 intervened.[3] Contrary to Defendant's arguments, even if Defendant held Victim's head under water for mere seconds as opposed to a minute or longer, a reasonable jury could still find that Defendant's overall course of action created a substantial risk of death to Victim. See State v. Raines , 118 S.W.3d 205, 208, 210 (Mo. App. 2003) (sufficient evidence of substantial risk of death to support a finding of serious physical injury where the defendant threatened to kill the victim, struck her on the head repeatedly, and forcibly held her head under the water of a pond for "a few seconds"). The seriousness of the risk to Victim's life was corroborated by her own testimony at trial that she had difficulty breathing and was coughing when she regained consciousness.
A reasonable juror could certainly conclude that Defendant's actions of beating Victim until she was unconscious and subsequently holding her head underwater raised "a legitimate concern" that Victim could die. See Hughes , 469 S.W.3d at 900. There was sufficient evidence adduced at trial to establish that Defendant caused serious physical injury because he created a substantial risk of death to Victim.
Furthermore, the State presented sufficient evidence to show that Victim suffered a protracted loss or impairment. A "protracted loss or impairment" is defined as "a decrease or diminishing or damaging of an action or ability of the body to do that for which it is intended that is something short of permanent but more than of short duration." State v. Roper , 136 S.W.3d 891, 897 (Mo. App. 2004) (internal quotation marks omitted). "No minimum degree of trauma is required, provided that the loss or impairment is more than momentary." Id ."Protracted impairment" concerns the temporal aspect of the injury. State v. Daniel , 103 S.W.3d 822, 827-28 (Mo. App. 2003). "Whether an injury constitutes protracted impairment depends on the circumstances of each case." Id . at 828.
Victim testified that she began suffering from consistent migraines following the incident. Such type of injury can constitute an impairment as contemplated under the statute. See Roper , 136 S.W.3d at 897 (finding protracted loss or impairment where victim testified that she suffered from regular headaches and jaw problems due to an assault, despite never seeking medical treatment). Victim further testified that the migraines were still recurring at the time of trial - nearly ten months after the assault. Such a length of time is sufficient to show that her impairment was protracted. See State v. Oliver , 291 S.W.3d 324, 327 (Mo. App. 2009) (victim being "laid up" for three weeks due to injuries was protracted impairment); State v. Ross , 939 S.W.2d 15, 18-19 (Mo. App. 1997) ("Seven days without the use of a leg or foot is sufficient to constitute protracted impairment."). A reasonable jury could find that Victim's migraines constituted a protracted impairment sufficient to establish serious physical injury.
In sum, there was ample evidence adduced at trial to establish that Defendant caused serious physical injury because Victim was under a substantial risk of death and suffered from a protracted impairment. Defendant's point is denied. The judgment of the trial court is affirmed.
WILLIAM W. FRANCIS, JR., P.J. - CONCUR
MARY W. SHEFFIELD, J. - CONCUR

All statutory references are to RSMo Noncum. Supp. (2014).

The trial court commented at sentencing: "I believe that had it not been for it being a warm evening and people had their windows and doors open and some fairly heroic actions on the part of some people in the neighborhood, this woman would be dead[.] ... [W]e would be here on a sentencing of - on first- or second-degree murder."