SUPREME COURT OF MISSOURI
 en banc

STATE OF MISSOURI, ) Opinion issued March 8, 2021
 )
 Respondent, )
 )
v. ) No. SC98844
 )
CHRISTOPHER L. LEHMAN, )
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY
 The Honorable Jack A.L. Goodman, Judge

 Christopher Lehman appeals his conviction for the class E felony of loitering within

500 feet of a public park in violation of section 566.150. 1 He contests the sufficiency of

the evidence against him, arguing it failed to show he was knowingly within 500 feet of a

public park or that he was loitering. He also argues section 556.150 is constitutionally

invalid because it is overbroad and the term “loitering” is vague.

 This Court agrees with Mr. Lehman that the evidence was insufficient to support his

conviction for knowingly loitering within 500 feet of a public park. The State simply failed

to present sufficient evidence from which the circuit court, as the factfinder, would be able

1
 All statutory citations are to RSMo Supp. 2017 unless otherwise noted.
to determine beyond a reasonable doubt that the distance to the park from the parking lot

and community building in which Mr. Lehman admittedly was present was 500 feet or less.

For that reason, the judgment of conviction is reversed, and this Court enters a judgment

of acquittal. 2

 I. FACTUAL AND PROCEDURAL BACKGROUND

 Based on events occurring July 4, 2018, in Seligman, Missouri, the State charged

Mr. Lehman with the class E felony of loitering within 500 feet of a public park in violation

of section 566.150. Section 566.150.1(2) provides that an individual “shall not knowingly

be present in or loiter within five hundred feet of any real property comprising any public

park with playground equipment” if the person has been found guilty of incest in another

state and if that conduct would violate section 568.020 if committed in Missouri. Mr.

Lehman does not contest that he has a previous incest conviction from the state of Arkansas

and that his conduct would have violated section 568.020 if committed in Missouri. The

question at trial was whether he violated section 566.150 by loitering in a parking lot within

500 feet of a public park during Seligman’s 2018 Fourth of July parade.

 The case proceeded to a bench trial, during which the State introduced by stipulation

between the parties only three pieces of evidence: 1) a criminal history record showing

Mr. Lehman’s prior guilty plea to felony incest in the state of Arkansas; 2) the police report

2
 “[I]f a conviction is reversed solely due to evidentiary insufficiency
the double jeopardy clause requires judgment of acquittal.” State v. Liberty, 370 S.W.3d
537, 553 (Mo. banc 2012) (alteration in original). Given the disposition of the sufficiency
of evidence issue, this Court does not reach Mr. Lehman’s additional claims challenging
the constitutional validity of section 566.150.

 2
from Seligman Police Chief Mike Phillips, the investigating and arresting officer in the

case; and 3) video surveillance footage recorded on July 4, 2018, of the parking lot in which

Chief Phillips saw Mr. Lehman and the inside of the local community building.

 In his report, Chief Phillips’ wrote that he had been escorting a “4th of July parade

from Dollar General to the City Park on Main Street.” He said that, as the parade passed

Joan Street, he spotted Mr. Lehman in a red cutoff shirt and blue jeans leaning against a

silver van in the “parking lot of the City Park/City Hall.” Chief Phillips’ report described

the parking spot in which he saw Mr. Lehman as the “2nd parking place on the North side

of the parking lot near the park.” The report did not state what was meant by the parking

lot being “near” the park or otherwise estimate or provide a measurement as to the distance

between the city park and the parking spot where Chief Phillips saw Mr. Lehman. Neither

was any other evidence of distance introduced. Chief Phillips’ report simply went on to

state:

 From previous encounters I knew [Mr. Lehman] to be a Registered Offender
 in the state of Missouri; [Mr. Lehman] was also not allowed within 500 Feet
 of a Park with equipment, the City Park has Swings, a Splash Pad and other
 various equipment. After dealing with other issues at the park for the 4th of
 July event, [Mr. Lehman] had left in the silver van.

 Chief Phillips’ report then stated he had reviewed surveillance video from the

parking lot and had discovered that Mr. Lehman had arrived before the parade started, had

gone into the community building “located on the same lot as the City Park and City Hall,”

and had then come back out to watch the parade. The report also stated that, after his

review of the surveillance video, Chief Phillips went to Mr. Lehman’s residence and asked

Mr. Lehman why he was at the community center. According to the report, Mr. Lehman

 3
responded that he had been there for the Fourth of July event; Chief Phillips “advised [Mr.

Lehman] that he was not allowed within 500 [f]eet of a city park, [Mr. Lehman] advised

that he was not aware that he wasn’t allowed there.” Chief Phillips then arrested Mr.

Lehman.

 The surveillance videos to which Chief Phillips’ report referred are from two

mounted video cameras overlooking the parking lot in question as well as a third camera

inside the local community building. The outside cameras show two different angles of

the parking lot and the immediately surrounding area. In his report, Chief Phillips said

Mr. Lehman was leaning on a silver van parked on the north side of the parking lot “near”

the park and he saw Mr. Lehman near the van after passing Joan Street while escorting the

parade down Main Street from the Dollar General to the park.

 The surveillance video shows a parade of vehicles going from right to left down

(presumably) Main Street and passing first a cross street (presumably Joan Street) and then

a small grassy area before passing the parking lot where Chief Phillips said he saw Mr.

Lehman. Although Chief Phillips said the parade went to the park, the parade does not

stop at the parking lot but proceeds out of sight off the left side of the screen. People can

be seen standing on the parade route on Main Street watching the vehicles pass Joan Street,

the small grassy area, the parking lot, and out of view to the left. Although the image

quality of the video is grainy, it is evident there are also trees and grassy areas across Main

Street and Joan Street. Nothing shows whether any of these areas are the park, however,

and no play equipment can be seen.

 4
 At various points throughout the surveillance footage, one can see a man in a red

top and blue jeans. At one point, the man enters the community building, and, at another

point, one can see him standing and watching a procession of vehicles go by on a road just

beyond the parking lot, some with American flags.

 Mr. Lehman does not quarrel with the State’s identification of him as the man

wearing the red shirt and blue jeans in the video, nor does he challenge the State’s assertion

that, at another point, he was leaning on a silver van in the second spot on the north end of

the parking lot while watching the parade enter the screen view from the right and then

proceed out of view to the left. Mr. Lehman does note, however—and the State conceded

at oral argument—that none of the surveillance videos reveal any playground equipment

or the “splash pad” or any other play equipment referred to in the police report, nor do they

show anything that can be identified as “the park.”

 The State rested after introducing the police report, the surveillance videos, and

evidence of Mr. Lehman’s previous conviction. No witnesses testified. Mr. Lehman put

on no evidence and, instead, moved for judgment of acquittal at the close of the State’s

evidence and at the close of all evidence. The circuit court overruled both motions. It

found Mr. Lehman guilty and sentenced him to four years’ imprisonment, suspended

execution of that sentence, and placed him on probation for five years.

 Mr. Lehman’s timely appeal to the court of appeals raised four points of error: the

evidence was insufficient because the State failed to prove he was knowingly within 500

feet of a public park; the State failed to prove he was “loitering”; section 566.150 is

constitutionally invalid because it is vague; and section 566.150 is constitutionally invalid

 5
because it is overbroad. Finding Mr. Lehman’s challenges to the constitutional validity of

section 566.150 invoked this Court’s exclusive appellate jurisdiction, the court of appeals

transferred the case to this Court prior to opinion. Mo. Const. art. V, § 3.

 II. STANDARD OF REVIEW

 In determining whether there is sufficient evidence “to support a conviction and to

withstand a motion for judgment of acquittal, this Court does not weigh the evidence but

rather accepts as true all evidence tending to prove guilt together with all reasonable

inferences that support the verdict, and ignores all contrary evidences and inferences.”

State v. Gilmore, 537 S.W.3d 342, 344 (Mo. banc 2018) (alterations omitted), quoting, State

v. Ess, 453 S.W.3d 196, 206 (Mo. banc 2015). 3

 Circumstantial rather than direct evidence of a fact is sufficient to support a verdict.

State v. Grim, 854 S.W.2d 403, 406 (Mo. banc 1993). If that evidence supports equally

valid inferences, it is up to the factfinder to determine which inference to believe, as “[t]he

[factfinder] is permitted to draw such reasonable inferences from the evidence as the

3
 “When reviewing the sufficiency of the evidence, the standard of review on appeal from
a bench-tried case is the same as the standard used on appeal of a case tried to a jury.”
State v. Shaw, 592 S.W.3d 354, 357 (Mo. banc 2019). Some cases refer to appellate review
of a circuit court’s ruling on a motion for judgment of acquittal in a jury-tried case as
requiring a determination of whether the State “made a submissible case.” See, e.g., State
v. Bumbery, 492 S.W.3d 656, 661 (Mo. App. 2016). This is simply another way to state
that the issue is “whether the State presented sufficient evidence from which a reasonable
juror could have found [the d]efendant guilty of the crime beyond a reasonable doubt.”
State v. Hall, 561 S.W.3d 449, 452-53 (Mo. App. 2018). To the extent a few appellate court
decisions speculate in dicta that different, if comparable, standards of review of the
sufficiency of the evidence are used in bench-tried cases and jury-tried cases, see, e.g.,
State v. McDowell, 519 S.W.3d 828, 837 (Mo. App. 2017), those statements are inconsistent
with this Court’s well-settled rule, quoted above, that the standards are the same whether
the factfinder is a judge or jury.

 6
evidence will permit.” State v. Hineman, 14 S.W.3d 924, 927 (Mo. banc 1999). Reliance

on circumstantial evidence, however, does not permit this Court to “supply missing

evidence or give the state the benefit of unreasonable, speculative or forced inferences.”

State v. Langdon, 110 S.W.3d 807, 811-12 (Mo. banc 2003). “This Court asks only whether

there was sufficient evidence from which the trier of fact reasonably could have found the

defendant guilty.” State v. Claycomb, 470 S.W.3d 358, 362 (Mo. banc 2015) (internal

quotation omitted) (emphasis added).

III. THE STATE FAILED TO INTRODUCE EVIDENCE FROM WHICH A
 FACTFINDER REASONABLY COULD CONCLUDE THAT LEHMAN WAS
 WITHIN 500 FEET OF A PUBLIC PARK

 The State must prove every element of a crime charged beyond a reasonable doubt.

State v. Seeler, 316 S.W.3d 920, 925 (Mo. banc 2010). Mr. Lehman argues the circuit court

erred in overruling his motion for judgment of acquittal because the State failed to prove

he was knowingly within 500 feet of a public park. 4 In support, in the argument section of

his brief, Mr. Lehman states both that the State failed to show he had knowledge of being

within 500 feet of a public park and also that the police report “does not mention the

distance between the community building and the park.” Mr. Lehman’s brief further argues

4
 While it would have been preferable that Mr. Lehman set out in separate points relied on
his challenges to the sufficiency of the evidence regarding both the knowledge and distance
elements of the statute, any error in failing to do so does not preclude review of those
insufficiency claims on the merits. The State does not argue otherwise. “[T]his Court long
has held that sufficiency claims are considered on appeal even if not briefed or not properly
briefed in the appellate courts.” Claycomb, 470 S.W.3d at 361. Regardless whether
properly set out in a point relied on, “[s]ufficiency of the evidence is reviewed on the
merits, not as plain error.” Id.; see also State v. Zetina-Torres, 482 S.W.3d 801, 809 (Mo.
banc 2016).

 7
the surveillance videos do not reveal the park’s location. At oral argument before this

Court, Mr. Lehman again argued the police report did not specify the location of the public

park; therefore, no evidence demonstrated he was loitering within 500 feet of the park, let

alone that he knew as much. This Court agrees. 5

 The record consists of only three pieces of evidence. Viewed independently or in

conjunction with one another, those three pieces of evidence were insufficient to make a

submissible case because they failed to provide a basis on which the court could find

beyond a reasonable doubt that Mr. Lehman was actually within 500 feet of a public park

as required to prove he was loitering within 500 feet of a public park.

 The State relies primarily on Chief Phillips’ report in claiming the evidence was

sufficient because the factfinder could draw a reasonable inference from the report that

Mr. Lehman knew he was within 500 feet of a public park. But the report noted only that

the parking lot was “near” the park and that Mr. Lehman was “not allowed within 500 Feet

of a Park with equipment.”

 These facts provide insufficient information about the location of the park relative

to Mr. Lehman. It is not enough to state (incorrectly) that Mr. Lehman is not permitted

within 500 feet of a public park with playground equipment (in fact, he is not permitted to

loiter within 500 feet of a public park). The State was required to prove that Mr. Lehman

actually was loitering within 500 feet of a public park. The report, however, simply did

5
 Because the State failed to provide evidence from which a reasonable factfinder could
conclude beyond a reasonable doubt that Mr. Lehman was actually within 500 feet of a
public park with playground equipment, this Court need not, and does not, reach the issue
of whether his conduct in the parking lot constituted “loitering.”

 8
not offer facts from which a reasonable factfinder could conclude Mr. Lehman was within

500 feet of the public park.

 The report’s notation that Mr. Lehman was in the “2nd parking place on the North

side of the parking lot” and that the parking lot is “near” the park is insufficient because

the police report contained no information about how near the park was to the parking lot.

“Near” is a subjective term. It does not convey objective information as to the distance

between the park and the community building. For example, one person might use “near”

to describe a location a few miles away, and another might use “near” to describe

something 50 yards away. Knowing that Chief Phillips believed the parking lot was “near”

the park and that it was on a lot shared by the community center and the park did not

provide a factual basis for the circuit court, acting as the factfinder here, to reasonably infer

that the park was within 500 feet (or any other particular distance) of the parking lot.

Indeed, the State directs this Court to no authority holding that such a subjective description

alone can support a verdict requiring proof of a particular distance.

 The State correctly notes that criminal conduct may be proved by circumstantial

evidence, so long as it is proved beyond a reasonable doubt. See, e.g., Grim, 854 S.W.2d

at 406. And, if that evidence supports equally valid and reasonable inferences, then the

jury or judge is permitted to determine which reasonable inference to believe. Hineman,

14 S.W.3d at 927. But, to be sufficient, the circumstantial evidence still must give “rise to

a logical inference” that a fact exists, not a speculative inference. State v. Regazzi, 379

S.W.2d 575, 578 (Mo. 1964) (emphasis added). It is a well-settled and longstanding

 9
principle that speculative inferences “may not be used to support a verdict.” State v. Clark,

490 S.W.3d 704, 711 (Mo. banc 2016).

 The dissenting opinion says that, nonetheless, because grass can be seen next to the

parking lot, the circuit court could have inferred this grassy area was the park that Chief

Phillips said was near the parking lot. Chief Phillips’ report and the surveillance videos,

however, do not support that speculation.

 Chief Phillips said he escorted a parade down Main Street and, as the parade passed

Joan Street, he looked over and saw Mr. Lehman in the parking lot that was “near” the

park. The surveillance video shows the parade continuing past Joan Street, that small

grassy area, and the parking lot. There are also grassy areas, some with trees, visible across

Main Street and past Joan Street. The parade to the park did not stop at any of them.

Nothing in the record suggests these are anything but grass and trees, which exist both

inside and outside parks. Because Chief Phillips’ description of Mr. Lehman as being

“near” the park provides no useful information about the park’s location, the circuit court

would have had to guess that the grassy area adjacent to the parking lot or any other specific

area was the park. While the dissenting opinion would permit this speculation, that is

inconsistent with the rudimentary principle that a verdict may not rest on speculative

inferences or conjecture. Clark, 490 S.W.3d at 711; Langdon, 110 S.W.3d at 811-12.

 Mr. Lehman compares his case to that of State v. White, 28 S.W.3d 391 (Mo. App.

2000). In White, the defendant was convicted of knowingly delivering a controlled

substance to a residence within 2,000 feet of a school. Id. at 393. The State introduced a

map depicting the distance between the residence and the school as 896 feet. Id. at 397.

 10
But nothing on the map was drawn to scale, and “the map d[id] not indicate the topography

of the area, the visibility from the residence to the school, or a complete picture of the

access to the residence from roads or streets that do or do not pass by the school.” Id.

Moreover, “[t]here was no evidence regarding the size and height of the school building(s),

how many blocks away the school is from the residence, and whether the school is visible

from the residence.” Id. The court of appeals concluded, “From the record, there is nothing

from which the jury could reasonably infer whether the school was a highly visible large

complex, or a single classroom in the basement of a residential building.” Id. 6 It held the

evidence was simply insufficient to prove beyond a reasonable doubt that the defendant

knew he had delivered a controlled substance within 2,000 feet of a school. Id. 7

6
 The mandate in White was later recalled on grounds not relevant to the sufficiency of the
evidence issue as it related to the charge of delivering a controlled substance within 2,000
feet of a school. See State v. White, 70 S.W.3d 644 (Mo. App. 2002).
7
 People v. Davis, 55 N.E.3d 1246, 1250 (Ill. App. 2016), is similar. In Davis, the defendant
was convicted of delivery of a controlled substance within 1,000 feet of a school for his
role in a drug transaction that took place in an alley behind a gas station. Id. at 1248. On
appeal, the defendant argued the evidence was insufficient to show he was within 1,000
feet of a school. Id. at 1249. The parties had introduced by stipulation evidence that the
gas station was 822 feet from the school property line as measured by an investigating
officer. Id. The defendant, however, argued the State failed to prove the school was within
1,000 feet of the location in the alley where the transaction took place because it had not
presented evidence of the specific location where the transaction took place and failed to
introduce evidence of the distance from that location to the school. Id. at 1250. The court
agreed, finding “the record [wa]s devoid of evidence establishing that the distance between
the real property comprising [the school] and the actual location in the alley where the
delivery of the controlled substance took place is 1000 feet or less.” Id. at 1251. The court,
therefore, reversed the conviction for that charge. Id.

 11
 The State did not introduce a map here, nor has it sought judicial notice of the

distance between the park and the parking lot. Neither did it otherwise show the distance

between the two locations through photographs or other evidence.

 The State notes the portion of Chief Phillips’ report that states Mr. Lehman walked

into the community building “on the same lot at the City Park and City Hall.” But nowhere

does the report note the size of the “lot” or the distance between the community building

and the city park. Again, a factfinder is simply not permitted to speculate as to that

distance. 8

 Had the public park been clearly visible in the surveillance videos admitted into

evidence, the videos and Chief Phillips’ report together may have allowed a factfinder to

draw a reasonable inference from the juxtaposition of these landmarks as to whether the

park was within 500 feet of Mr. Lehman’s location in the parking lot. But neither an

identifiable part of the park, nor playground equipment, nor any other sort of play

equipment or “splash pad” is visible in the surveillance video.

 For reasons unexplained, the State submitted its case on evidence that did not

provide the distance between Mr. Lehman’s location and the city park. It would have been

a simple evidentiary gap to fill if a witness were able to testify that the park and parking

8
 The State notes in its brief the section of Chief Phillips’ report providing that, upon
advising Mr. Lehman he was not allowed within 500 feet of a public park (while, in fact,
Mr. Lehman is not permitted to loiter within 500 feet of a public park), Mr. Lehman
allegedly responded to Chief Phillips that “he was not aware he wasn’t allowed there.” The
State expressly acknowledged at oral argument that this alleged statement by Mr. Lehman
does not establish that he was, or knew he was, within 500 feet of the public park. Indeed,
it indicates he did not believe that, by being in the parking lot, he was violating the
requirement that he not loiter within 500 feet of the park.

 12
space were within 500 feet of each other. It may be that such proof was not forthcoming;

it may be that the State could have presented such proof but simply failed to realize Chief

Phillips’ report failed to specify how close the park was to the parking lot space. All the

record shows is the State did not provide this necessary proof that Mr. Lehman was within

500 feet of the park.

 The State, therefore, failed to introduce evidence from which a factfinder could

conclude beyond a reasonable doubt that Mr. Lehman was actually within 500 feet of a

public park as required to support his conviction for loitering within 500 feet of a public

park under section 566.150.

IV. CONCLUSION

 The State failed to adduce sufficient evidence from which a reasonable factfinder

could have found Mr. Lehman guilty beyond a reasonable doubt. “The Double Jeopardy

Clause forbids a second trial for the purpose of affording the prosecution another

opportunity to supply evidence which it failed to muster in the first proceeding.” Burks v.

United States, 437 U.S. 1, 11 (1978). Mr. Lehman’s judgment of conviction is reversed,

and this Court enters a judgment of acquittal. Liberty, 370 S.W.3d at 553; Rule 84.14.

 _________________________________
 LAURA DENVIR STITH, JUDGE

Draper, C.J., Wilson, Powell and Breckenridge, JJ.,
concur; Fischer, J., dissents in separate opinion filed;
Russell, J., concurs in opinion of Fischer, J.

 13
 SUPREME COURT OF MISSOURI
 en banc

STATE OF MISSOURI, )
 )
 Respondent, )
 )
v. ) No. SC98844
 )
CHRISTOPHER L. LEHMAN, )
 )
 Appellant. )

 DISSENTING OPINION

 I disagree with the principal opinion's conclusion that the State presented

insufficient evidence from which the circuit court could have found Lehman was within

500 feet of any real property comprising any public park with playground equipment. In

my view, the evidence presented at trial, viewed in the light most favorable to the State,

permitted the circuit court—which reviewed all of the evidence submitted without

objection—to draw reasonable inferences to find that element of the crime beyond a

reasonable doubt. Because the principal opinion misapplies our standard of review and

reaches the opposite conclusion, I respectfully dissent.
 Standard of Review

 When considering the sufficiency of the evidence on appeal, this Court must
 determine whether sufficient evidence permits a reasonable juror to find guilt
 beyond a reasonable doubt. The evidence and all reasonable inferences
 therefrom are viewed in the light most favorable to the verdict, disregarding
 any evidence and inferences contrary to the verdict. This is not an
 assessment of whether the Court believes that the evidence at trial
 established guilt beyond a reasonable doubt but rather a question of
 whether, in light of the evidence most favorable to the State, any rational
 fact-finder could have found the essential elements of the crime beyond a
 reasonable doubt.

State v. Stewart, 560 S.W.3d 531, 533 (Mo. banc 2018) (internal citations and quotation

marks omitted) (emphasis added). "In reviewing the sufficiency of the evidence supporting

a criminal conviction, an appellate court does not act as a super juror with veto powers but

gives great deference to the trier of fact." State v. Jones, 479 S.W.3d 100, 105 (Mo. banc

2016) (internal quotation marks omitted).

 This standard of review is the same for bench-tried cases. State v. Niederstadt, 66

S.W.3d 12, 13 (Mo. banc 2002). Circumstantial evidence is sufficient by itself to support

a guilty verdict. State v. Grim, 854 S.W.2d 403, 406 (Mo. banc 1993).

 Analysis

 As germane to this case, § 566.150 1 provides:

 Any person who has been found guilty of . . . [a]ny offense in any other
 jurisdiction which, if committed in this state, would be a violation listed in
 this section[2] . . . shall not knowingly be present in or loiter within five
 hundred feet of any real property comprising any public park with
 playground equipment[.]

1
 All statutory references are to RSMo Supp. 2017 unless otherwise provided.
2
 Section 566.150.1(1) includes incest in violation of § 568.020 as one of the applicable crimes.
 2
Lehman does not dispute he has been found guilty of an offense (incest) in Arkansas that,

if committed in Missouri, would have violated § 568.020. Further, Lehman did not object

to the police report at trial, which conclusively establishes the public park contains various

types of playground equipment. The only disputed issue of fact the parties argued is

whether, in the light most favorable to the State, the circuit court erroneously found, beyond

a reasonable doubt, Lehman was within 500 feet of any real property comprising any public

park. Stewart, 560 S.W.3d at 533. 3

 In concluding the State failed to make its requisite showing, the principal opinion

relies heavily on two premises: (1) Chief Mike Phillips' statement Lehman was in the

parking lot "near" the park was too subjective to allow the circuit court to infer Lehman

was within 500 feet of the public park; and (2) the State failed to introduce evidence

showing the specific distance between Lehman and the public park. The principal opinion

fails to accept the reasonable inferences drawn from other portions of the police report and

video surveillance footage, which, if viewed in conjunction with one another, caused the

circuit court to infer Lehman was actually within 500 feet of any real property comprising

a public park with equipment.

3
 The State does not argue Lehman's presence in the parking lot and in the community building
(both being on the same lot as the city park) supports Lehman's conviction. Presumably, the State
does not make this argument because it believes the evidence clearly supports the elements of
§ 566.150 as it charged them; Lehman was loitering within 500 feet of a public park with
playground equipment. I will not make this argument for the State and I do not fault the principal
opinion for not addressing an argument not made.
 3
Chief Phillips' police report 4 states in pertinent part:

 On Wednesday, July 4th, 2018 . . . I . . . began to escort a 4th of July parade
 from Dollar General to the City Park. . . . I observed [Lehman] . . . in the
 parking lot of the City Park/City Hall. [Lehman] was wearing a red cut off
 shirt and blue jeans, [Lehman] was leaning up against a silver van in the 2nd
 parking place on the North side of the parking lot near the park. . . . [Lehman]
 was also not allowed within 500 Feet of a Park with equipment, the City Park
 has Swings, a Splash Pad and other various equipment. . . . Upon reviewing
 [the community building's video surveillance footage] I discovered
 [Lehman]. . . [went] into the community building, which is located on the
 same lot as the City Park and City Hall. [Lehman] walked around the
 Community Building, [Lehman] then walked back outside to the back side
 of the van and watched the parade[.]

(Emphasis added).

 In addition, one segment of the video surveillance footage shows Lehman walking

to his van before the parade starts and remaining there for several minutes. Yet another

shows Lehman standing in the community building and public park parking lot watching

the parade a matter of minutes later. Clearly visible in the background of both segments,

on the right-hand side of the parking lot, is a grassy area where people, including children,

were passing through or congregating. Certainly, the police report's statements that the

community building is on the same lot 5 as the city park, that Lehman was leaning on his

van in a parking spot "near" the park, and that Lehman was actually in the city park parking

4
 Importantly, Chief Phillips listed the "Primary Incident Location" as "City Park" in the police
report.
5
 The dictionary defines a "lot" as: "a: an allotment or portion of land set aside for a special
purpose; b. a measured parcel of land having fixed boundaries and designated on a plot or survey;
c. a parcel of land in fact used for, intended for, or appropriated to a common purpose."
WEBSTER'S THIRD NEW INT'L DICTIONARY 1338 (3d ed. 2002). The police report's
notation that the community building, city hall, and city park are all located on the same lot,
coupled with the video of the grassy area, creates the reasonable inference the grassy area was the
city park.
 4
lot, among others, permitted the circuit court to reasonably infer the grassy area in the video

footage was the city park. 6

 Furthermore, the video surveillance footage shows Lehman is clearly within 500

feet of the grassy area—and, therefore, the public park—when standing near his van before

the parade and when standing near the community building in the parking lot during the

parade. At one point near the end of the video, Lehman is no more than a handful of steps

from the grassy area as he speaks to another patron and then eventually enters and remains

in his van. The standard of review compels this Court to determine whether the circuit

court could have found Lehman was within 500 feet of the park, viewing the evidence in

the light most favorable to the State. In my view, the circuit court made reasonable

inferences based on the entire record from the evidence and there is sufficient evidence to

support Lehman's conviction.

 __________________________
 Zel M. Fischer, Judge

6
 The principal opinion discounts the video surveillance footage because "[no] identifiable part of
the park, nor playground equipment . . . is visible in the surveillance video." Slip op. at 12. This
statement misses the point. The video surveillance footage, coupled with the police report, need
only give rise to the reasonable inference that the grassy area is part of the park. Because the police
report establishes the park contains playground equipment and is on the same lot, it is not necessary
for the footage to show playground equipment.
 5